DULCE MARÍA NÁTER CARDONA, peticionaria, *v.* ISRAEL RAMOS MUÑIZ, *Ex parte*, recurrido.

*Número:* CC-2003-604        *Resuelto:* 23 de julio de 2004

618

*Víctor A. Vélez Cardona,* abogado de la parte peticionaria; *Carmen G. Beníquez Beníquez* y *Ruth E. Aquino García,* abogadas de la parte recurrida.

La Jueza Presidenta Señora Naveira Merly emitió la opinión del Tribunal.

I

La Sra. Dulce María Náter Cardona y el Sr. Israel Ramos Muñiz contrajeron matrimonio el 8 de agosto de 1998 y durante dicha unión procrearon un hijo. El matrimonio Ramos-Náter residió en una vivienda construida en un terreno propiedad del Sr. Eladio Náter, padre de la señora Náter Cardona.

Posteriormente, la señora Náter Cardona y el señor Ramos Muñiz presentaron una petición de divorcio por consentimiento mutuo, la cual acompañaron con las estipula-

ciones correspondientes. Con relación a los bienes de la sociedad legal de gananciales, las partes acordaron que la señora Náter Cardona retendría los muebles y enseres del hogar, valorados en dos mil dólares, mientras que el señor Ramos Muñiz permanecería en posesión de un automóvil marca Grand Prix, modelo de 1995, valorado en catorce mil novecientos noventa dólares. Además, estipularon que:

[L]a co-peticionaria [señora Náter Cardona] continuará ocupando una estructura con fines residenciales construida por el co-peticionario ISRAEL RAMOS MUÑIZ antes de celebrarse el matrimonio entre ambos. Esto será hasta tanto la co-peticionaria DULCE MARIA NATER CARDONA contraiga nuevamente matrimonio o en la alternativa hasta que la co-peticionaria mantenga una relación consensual con cualquier otra persona. Sentencia del Tribunal de Primera Instancia de 21 de junio de 2002, pág. 3.

El foro de instancia acogió las estipulaciones, y mediante Sentencia de 21 de junio de 2002, notificada el 31 de julio del mismo año, declaró roto y disuelto el vínculo matrimonial. El 2 de septiembre de 2002 la señora Náter Cardona presentó una moción de relevo de sentencia, en la cual alegó que posee poca escolaridad —apenas tercer grado de escuela elemental— y que el señor Ramos Muñiz la indujo a suscribir las estipulaciones redactadas en su totalidad por el abogado de éste sin que ella contase con asesoría legal. Señaló que no prestó un consentimiento informado y que fue engañada por el señor Ramos Muñiz. Indicó, además, que la estipulación relacionada con la residencia conyugal nada dispuso acerca del terreno donde está ubicada. En consecuencia, la señora Náter Cardona solicitó que, luego de celebrarse una vista evidenciaria, fuese relevada de aquella parte de la sentencia relacionada con la liquidación de la sociedad legal de gananciales, en específico con lo relacionado con la residencia conyugal. El 22 de febrero de 2003 presentó una moción suplementaria, donde nuevamente solicitó el relevo de la estipulación re-

lacionada con la residencia conyugal, alegando que hubo fraude entre las partes y fraude al tribunal.

El foro de instancia señaló una vista para el 1ro de abril de 2003. Sin embargo, ésta no se llevó a cabo ya que, mediante Resolución de 31 de marzo de 2003, dicho tribunal denegó el relevo de sentencia al concluir que la señora Ramos Muñiz no expuso detalladamente las circunstancias que, según ella, constituyeron fraude al tribunal. De este dictamen acudió la señora Náter Cardona al antiguo Tribunal de Circuito de Apelaciones (Tribunal de Apelaciones). El foro apelativo intermedio emitió una resolución el 24 de junio de 2003 en la que denegó el auto solicitado, luego de determinar que la señora Náter Cardona no demostró el alegado fraude al tribunal, de manera que pudiese ordenarse el relevo de la sentencia, sino que únicamente se limitó a hacer meras alegaciones.

Inconforme, la señora Náter Cardona acudió ante nos mediante un recurso de *certiorari*. En síntesis, adujo que incidió el Tribunal de Apelaciones al resolver que no era necesaria la celebración de una vista evidenciaria para darle la oportunidad de demostrar el fraude alegado. El 10 de octubre de 2003 expedimos el auto solicitado, y con el beneficio de las comparecencias de las partes, procedemos a resolver.

II

El recurso ante nos requiere que determinemos si ante una solicitud de relevo de aquella parte de la sentencia relacionada con la liquidación de la sociedad legal de gananciales en un divorcio por consentimiento mutuo aplica la disposición de la Regla 49.2 de Procedimiento Civil, 32 L.P.R.A. Ap. III, que especifica que en los casos de divorcio sólo podrá concederse el relevo de sentencia por fraude al tribunal o nulidad.

La Regla 49.2 de Procedimiento Civil, *supra*,

establece el mecanismo procesal que se tiene disponible para solicitarle al foro de instancia el relevo de los efectos de una sentencia cuando esté presente alguno de los fundamentos allí expuestos.([1]) La citada regla provee un mecanismo post sentencia para impedir que se vean frustrados los fines de la justicia mediante tecnicismos y sofisticaciones.([2]) *Ortiz Serrano v. Ortiz Díaz*, 106 D.P.R. 445, 449 (1977). Este remedio permite al tribunal hacer un balance entre dos intereses en conflicto: de una parte, que toda litigación sea concluida y tenga finalidad, y de otra parte, que en todo caso se haga justicia. 11 *Wright, Miller and Kane's, Federal Practice and Procedure 2d* Sec. 2851, pág. 227 (1995).

■ Ahora bien, independientemente de la existencia de uno de los fundamentos expuestos en la Regla 49.2 de Procedimiento Civil, *supra, el relevar a una parte de los efectos de una sentencia es una decisión discrecional*, salvo en los casos de nulidad o cuando la sentencia ha sido satisfecha. *Rivera v. Algarín*, 159 D.P.R. 482 (2003).

"[N]o basta con demostrar al tribunal la procedencia por uno de los fundamentos. Después de demostrado el fundamento, hay que también convencer al tribunal que debe ejercitar su discreción bajo las circunstancias del caso para dejar sin efecto la sentencia". R. Hernández Colón, *Manual de Derecho Procesal Civil*, 2da ed. rev., San Juan, Ed. Equity, 1981, Sec. 4502, pág. 305. No es obligatoria la celebración de una vista al presentarse una moción de relevo de sentencia. *Ortiz Serrano v. Ortiz Díaz*, supra, pág. 449.

■ La Regla 49.2 de Procedimiento Civil, *supra*, debe ser interpretada liberalmente y cualquier duda debe ser

---

([1]) La Regla 43.1 de Procedimiento Civil, 32 L.P.R.A. Ap. III, define el término *sentencia* como cualquier determinación del tribunal que resuelva finalmente la cuestión litigiosa y de la cual pueda apelarse o solicitarse revisión.

([2]) Véase, en general, J.A. Cuevas Segarra, *Tratado de Derecho Procesal Civil*, San Juan, Pubs. J.T.S., 2000, T. II, págs. 783–790 y 792–795.

resuelta a favor de la parte que solicita que se deje sin efecto la sentencia. *Díaz v. Tribunal Superior*, 93 D.P.R. 79, 87 (1966). Sin embargo, reiteradamente hemos indicado que el mecanismo de relevo de sentencia no puede ser utilizado en sustitución de los recursos de revisión o de reconsideración. Tampoco está disponible para proveer un remedio adicional contra una sentencia erróneamente dictada. *Rivera v. Algarín*, supra; *Piazza v. Isla del Río, Inc.*, 158 D.P.R. 440 (2003); *Olmedo Nazario v. Sueiro Jiménez*, 123 D.P.R. 294, 299 (1989). De otra parte, la moción de relevo de sentencia debe ser presentada dentro del término fatal de seis meses de haberse registrado la sentencia. Sin embargo, dicho plazo es inaplicable cuando se trata de una sentencia nula. *Montañez v. Policía de Puerto Rico*, 150 D.P.R. 917, 921–922 (2000).

A tenor de la Regla 49.2 de Procedimiento Civil, *supra, en casos de divorcio sólo procede el relevo de sentencia cuando se alegue y pruebe un fraude al tribunal o la nulidad de la sentencia. Sucn. Pacheco v. Eastern Med. Assoc., Inc.*, 135 D.P.R. 701, 709 (1994); *Hernández v. Zapater*, 82 D.P.R. 777 (1961). Esta limitación obedece a razones de orden público, ya que con el divorcio surge un nuevo estado civil y, al mismo tiempo, permite a las partes crear otro, por lo que es necesario que los dictámenes judiciales para decretar la disolución del vínculo matrimonial sean sostenidos, salvo en circunstancias excepcionales. Véanse: Hernández Colón, *op. cit.*, Sec. 4510, pág. 310; R. Serrano Geyls, *Derecho de familia de Puerto Rico y legislación comparada*, San Juan, Universidad Interamericana de Puerto Rico, 1997, Vol. I, pág. 722. Ahora bien, la naturaleza muy particular del procedimiento establecido para el divorcio por la causal de consentimiento mutuo, requiere un tratamiento especial en torno a la aplicación de la Regla 49.2, *supra*, que tome en consideración las particularidades de ese procedimiento.

## III

■  La incorporación en nuestro ordenamiento del divorcio por consentimiento mutuo fue producto del reconocimiento del rezago de nuestra legislación en materia de divorcio y de la supremacía de la cual goza el derecho a la intimidad en el esquema constitucional de Puerto Rico. En *Figueroa Ferrer v. E.L.A.*, 107 D.P.R. 250, 265 (1978), reconocimos, además, la generalización en diversos países del divorcio, sin culpa ante el distanciamiento producido entre el derecho positivo y la realidad social ocasionado por el concepto culpa. En vista de lo anterior, decidimos armonizar el interés del Estado en la estabilidad de la familia, la debida protección de los hijos y la protección de las partes en la división de los bienes y en su sustento con el derecho a la intimidad que tienen las personas unidas por el matrimonio para tomar la decisión conjunta de divorciarse.

■  En la citada decisión resolvimos que la Constitución del Estado Libre Asociado de Puerto Rico consagra el derecho de las personas a proteger su dignidad y vida íntima en los procedimientos de divorcio mediante la expresión de la decisión de divorciarse por mutuo consentimiento. *Figueroa Ferrer v. E.L.A.*, supra, pág. 275. No obstante, indicamos que

> ... [e]l Estado puede y debe cerciorarse de que la decisión de solicitar conjuntamente la disolución del vínculo matrimonial no es producto de la irreflexión o de la coacción. Los tribunales interrogarán a las partes sobre estos particulares. Como medida adicional que tienda a garantizar que ha mediado la debida deliberación *no se aceptará petición alguna de divorcio bajo los principios enunciados sin que las partes adjunten las estipulaciones correspondientes sobre la división de sus bienes, el sustento de las partes y otras consecuencias del divorcio.* El tribunal no concederá el divorcio si a su entender alguna de

las partes no habrá de recibir protección adecuada. (Énfasis suplido.) Íd., págs. 276–277.(³)

En síntesis, en el divorcio por consentimiento mutuo, para efectos de su tramitación, se unen en un mismo procedimiento la causa de acción de divorcio y las causas de acción relacionadas con la custodia y patria potestad de los hijos menores de edad, si los hubiere, la liquidación de la sociedad legal de gananciales y los alimentos. Por el contrario, bajo las demás causales de divorcio contenidas en el Código Civil la causa de acción de divorcio se ejercita en un procedimiento independiente de aquel en el que posteriormente se dilucidará la causa de acción relacionada con la liquidación de la sociedad legal de gananciales.

En el divorcio por consentimiento mutuo, como regla general, el juez aceptará los acuerdos a los que lleguen las partes, los cuales tendrán efecto de cosa juzgada. Con relación a la naturaleza de las estipulaciones incluidas en la petición de divorcio por consentimiento mutuo, hemos resuelto que éstas tienen la naturaleza de un contrato de transacción judicial que obliga a las partes. *Igaravidez v. Ricci*, 147 D.P.R. 1, 5 (1998); *Ex parte Negrón Rivera y Bonilla*, 120 D.P.R. 61, 76 (1987); *Magee v. Alberro*, 126 D.P.R. 228, 232–233 (1990).(⁴) Ello en atención a que dichas estipulaciones ponen fin a un litigio e incorpo-

---

(³) Sobre el divorcio por consentimiento mutuo, véanse, en general: R. Ortega-Vélez, *Compendio de Derecho de Familia*, San Juan, Pubs. J.T.S., 2000, T. I, Secs. 5.5-5.5[8], págs. 210–221; R. Serrano Geyls, *Derecho de familia de Puerto Rico y legislación comparada*, San Juan, Universidad Interamericana de Puerto Rico, 1997, Vol. I, págs. 623–650; I. Picó Vidal, *Divorcio por consentimiento mutuo: su tramitación en los tribunales*, Río Piedras, Centro de Investigaciones Sociales, 1986.

(⁴) En *Neca Mortg. Corp. v. A & W Dev. S.E.*, 137 D.P.R. 860, 872–873 (1995), señalamos que un sector doctrinal español es de la opinión que a la transacción le aplican las reglas generales de la extinción de los contratos. De otra parte, el Art. 1716 del Código Civil, 31 L.P.R.A. sec. 4828, dispone que "[l]a transacción en que intervenga error, dolo, violencia o falsedad de documentos está sujeta a lo dispuesto en el [Art. 1217 nulidad por vicio del consentimiento de este código]".

ran unos acuerdos en el proceso judicial en curso. *Igaravidez v. Ricci*, supra, pág. 7.

La naturaleza que tienen las estipulaciones en los divorcios por consentimiento mutuo, de constituir cosa juzgada, debe ser analizada a la luz de la indeclinable obligación de los tribunales de velar por que dichos acuerdos confieran la debida protección a ambas partes. *McConnell v. Palau*, 161 D.P.R. 734 (2004). Es decir, *las estipulaciones presentadas al tribunal no quedan al exclusivo arbitrio de las partes*. Íd. Los tribunales siempre deben cerciorarse de que los acuerdos suscritos por las partes sean consecuencia de un proceso deliberativo en el que medie el conocimiento de las consecuencias de éstos, especialmente cuando sólo una de las partes comparece con representación legal. *Igaravidez v. Ricci*, supra, esc. 2. De otra parte, aunque, como regla general, las estipulaciones tienen el carácter de cosa juzgada, ello no implica que convirtamos el procedimiento de divorcio por consentimiento mutuo en uno absolutista e inflexible, con reglas férreas que han de aplicarse en todos los casos por igual. " 'El propósito primordial que anima todos los esfuerzos de los funcionarios envueltos en esta delicada misión —la de hacer justicia— así no lo permite.' " *Magee v. Alberro*, supra, pág. 233, citando a *Valencia, ex parte*, 116 D.P.R. 909, 913 (1986). La jurisprudencia del Tribunal Supremo de España ha resuelto que *el hecho de que la transacción tenga la autoridad de cosa juzgada, no implica que sean contratos invulnerables*. Sentencia de 26 de abril de 1963; *Neca v. A & W Dev. S.E.*, supra, pág. 873. Véase F. Puig Peña, *Compendio de Derecho Civil Español*, Madrid, Ed. Pirámide, 1976, T. IV, págs. 382–383.[5]

---

[5] En Puerto Rico hemos acogido esta postura con relación a las estipulaciones en torno a la pensiones alimentarias de los menores de edad al resolver que éstas no constituyen cosa juzgada, por lo cual siempre estarán sujetas a revisión. *McConnell v. Palau*, 161 D.P.R. 734 (2004); *Magee v. Alberro*, 126 D.P.R. 228, 234 (1990); *Ex parte Negrón Rivera y Bonilla*, 120 D.P.R. 61, 76 (1987).

La doctrina española ha admitido la intervención activa del tribunal para proteger los intereses de las partes en los acuerdos que conforman el convenio regulador —equivalente a las estipulaciones— en los casos de divorcio no contradictorio.(⁶) De acuerdo con los profesores Díez-Picazo y Gullón:

> Es verdad que los puntos que el juez tiene que examinar son literalmente limitados: si los acuerdos son dañosos para los hijos o gravemente perjudiciales para uno de los cónyuges. Sin embargo, en ese punto el artículo 90, más que una limitación objetiva de la materia a enjuiciar, propone una óptica valorativa a través de la cual la totalidad del convenio ha de ser examinado. Hay que señalar todavía que al juez no se le inviste sólo de la función de tutelar los derechos o intereses de los hijos, que en el convenio de los padres podrían quedar desasistidos, sino que vela también por los intereses de los mismos contratantes ....
>
> ... [N]*o nos encontramos ante un puro negocio jurídico de Derecho privativo, sino ante un acto mixto en el que intervienen los sujetos privados y la autoridad pública. Esta última, por su propia naturaleza, debe considerarse preponderante.* (Énfasis suplido.) L. Díez-Picazo y A. Gullón, *Sistema de Derecho Civil*, 7ma ed., Madrid, Ed. Tecnos, 1997, Vol. IV, pág. 133.

De particular importancia al caso de autos nos parecen las expresiones que sobre este particular ha hecho el Prof. Entrena Klett sobre las estipulaciones de los cónyuges en los procedimientos de divorcio no contencioso.

> En cuanto a las *estipulaciones puramente económicas postconyugales* (temas de vivienda, ajuar, distribución de los bienes, ayuda económica, etc.), las partes son soberanas para decidir y acordar, debiendo respetar su criterio el juez salvo que lo acordado sea "gravemente perjudicial" para uno de los esposos ... y al adverbio "gravemente" restringe muy mucho las

---

(⁶) En España, el procedimiento de divorcio no contradictorio permite que ambas partes soliciten que el tribunal decrete la disolución del matrimonio, siempre que se presente la petición de divorcio o separación por ambos cónyuges de común acuerdo o por uno de los cónyuges con el consentimiento del otro, una vez transcurrido el primer año de matrimonio. J.L. Lacruz Berdejo, *Matrimonio y divorcio: comentarios al nuevo Título IV del Libro Primero del Código Civil*, Madrid, Ed. Civitas, 1982, págs. 1041–1042.

630

posibilidades de intervención de la autoridad judicial. *Como vemos, el legislador deja esta materia al arbitrio de los esposos, pero no se le oculta la posibilidad de que uno de ellos pueda ser de inferior nivel de voluntad o de inteligencia que el otro, o pueda estar tan cansado del contencioso planteado, de sus problemas y discusiones inherentes que acabe por pasar por las horcas caudinas de las exigencias de su contraparte; a evitarlo o paliarlo tiene este precepto.* (Énfasis suplido.) C.M. Entrena Klett, *Matrimonio, separación y divorcio en la legislación actual y en la historia*, 2da ed., Pamplona, Ed. Aranzadi, 1984, pág. 663.

En conclusión, el hecho de que el procedimiento de divorcio por consentimiento mutuo no sea propiamente contencioso y que en la petición se acumulen varias causas de acción en adición a la de divorcio, no significa que "deje por ello de albergar el ejercicio de unas verdaderas acciones". Lacruz Berdejo, *op. cit.*, pág. 1045. En vista de lo anterior, aunque en nuestro ordenamiento se le atribuye a las estipulaciones de los cónyuges el carácter de un contrato de transacción, no podemos abstraernos de la realidad de que en ocasiones los acuerdos pueden estar motivados por la carga emocional involucrada en lograr la pronta disolución del matrimonio o la ventaja económica o intelectual que uno de los cónyuges tenga sobre el otro.

IV

En el caso ante nos, la señora Náter Cardona no ha solicitado ser relevada de la sentencia de divorcio, es decir, de la causa de acción mediante la cual se solicitó la disolución del vínculo matrimonial. Nos solicita ser relevada de la causa de acción relacionada con la liquidación de los bienes gananciales. Aduce como razón para su solicitud que fue *inducida por su ex cónyuge*, el señor Ramos Muñiz, *a suscribir las estipulaciones* incluidas con la petición de divorcio por consentimiento mutuo. De acuerdo con lo alegado por la señora Náter Cardona, *el señor Ramos Muñiz contrató los servicios del Lcdo. Ovidio López Bocanegra*

*para que redactase las estipulaciones. Esto lo hizo el licenciado López Bocanegra sin la intervención de la señora Náter Cardona.* Continuó alegando que posteriormente fue citada a la oficina de dicho abogado y allí, *sin estar asistida por representación legal alguna, ni proveérsele asesoría legal,* "se le inform[ó] lo que tenía que aceptar y lo que no tenía que aceptar". Moción al amparo de la Regla 49.2 de Procedimiento Civil, 30 de septiembre de 2002, pág. 2. Tal parece que tanto el licenciado López Bocanegra como el señor Ramos Muñiz fueron sus asesores. Es luego de este asesoramiento que la señora Náter Cardona suscribió las estipulaciones ignorando, según ella, sus consecuencias.

En particular, indica que firmó la estipulación relacionada con la liquidación de la sociedad legal de gananciales sin advertir que ésta resultaba perjudicial a su derecho de propiedad sobre la residencia conyugal que fue edificada en un terreno propiedad del padre de la señora Náter Cardona con el propósito de que ella adviniese dueña del inmueble.[7] Además, la señora Náter Cardona alega *que compareció a la vista de divorcio por derecho propio*, por lo cual no tuvo la oportunidad de asesorarse adecuadamente sobre la trascendencia de la estipulación sobre la liquidación de la sociedad de gananciales incluida en la petición de divorcio. Por otro lado, *el señor Ramos Muñiz compareció a dicha vista representado por el licenciado López Bocanegra.*

Un análisis de la totalidad de las circunstancias del caso refleja que la señora Náter Cardona estuvo en decidida desventaja durante todo el proceso de divorcio por consentimiento mutuo. Ésta suscribió la estipulación preparada unilateralmente por el abogado del señor Ramos Muñiz, la cual tuvo el efecto de liquidar la sociedad de bienes gananciales sin la deliberación y el consentimiento informado que debe preceder este tipo de acuerdo. De otra parte, se-

---

[7] Del expediente no surge que se haya planteado o discutido su derecho a hogar seguro. 31 L.P.R.A. secs. 1851–1857.

gún surge de autos, el señor Ramos Muñiz es dueño de un negocio, por lo que tiene mayores conocimientos y preparación que la señora Náter Cardona —quien únicamente cursó hasta el tercer grado de escuela elemental—[8] y que ostenta una mejor posición económica que su ex cónyuge. Esta posición le permitió contratar al licenciado López Bocanegra para que redactase las estipulaciones, lo asesorase y representase en la vista de divorcio.

Un factor indicativo de la ventaja indebida que ostentó el señor Ramos Muñiz sobre la señora Náter Cardona es el hecho de que el licenciado López Bocanegra, quien redactó las estipulaciones, compareció a la vista de divorcio únicamente en representación del señor Ramos Muñiz. Sobre este particular es menester indicar que la representación conjunta de los cónyuges por el mismo abogado en un caso de divorcio por consentimiento mutuo es la excepción. *Guías para uniformar el procedimiento de divorcio por consentimiento mutuo*, Conferencia Judicial, mayo 1988, Guía 2, pág. 18. De esta forma se evita que el abogado incurra en un posible conflicto de intereses al negociar las estipulaciones con las partes o al surgir un pleito entre los ex cónyuges posterior al divorcio. Además, se evita que el cónyuge con mayor control sobre los bienes ejerza una mayor influencia en el abogado o abogada por ser quien sufraga los honorarios. Íd., pág. 17.

Sin embargo, en *In re Orlando Roura*, 119 D.P.R. 1 (1987), nos confrontamos con un cuadro fáctico donde una abogada estuvo a cargo de redactar unas estipulaciones de divorcio por consentimiento mutuo contratada por uno solo de los cónyuges. La abogada querellada alegó que el único contacto que había tenido con el otro cónyuge fue

---

[8] Aunque no surge del expediente si la señora Náter Cardona posee la habilidad necesaria para leer y comprender las estipulaciones, sí se puede inferir que sus conocimientos son limitados.

cuando acudió a firmar los documentos.(⁹) Luego del divorcio, la ex cónyuge que había contratado a la abogada querellada para la redacción de las estipulaciones, solicitó nuevamente sus servicios para que la representase en un pleito contra su ex esposo relacionado con la liquidación de la sociedad legal de gananciales. A pesar de lo alegado por la abogada, a los efectos de que únicamente había representado a uno de los cónyuges en la redacción de las estipulaciones, en la citada decisión entendimos que *ésta había representado a ambos cónyuges en el procedimiento de divorcio por consentimiento mutuo.* En consecuencia, indicamos que

> ... bajo el Canon 21 de Ética Profesional existe una insalvable incompatibilidad en que un abogado, que ha representado a ambas partes en un pleito de divorcio por consentimiento mutuo, intervenga y participe en esa condición en cualquier litigio posterior relacionado, directa o indirectamente, con las cuestiones objeto de dicho divorcio por consentimiento. *In re Orlando Roura*, supra, pág. 6.

En este recurso, la señora Náter Cardona alega que el licenciado López Bocanegra fue el que preparó las estipulaciones y quien le indicó cuáles debería aceptar y cuáles no. Sin embargo, éste expresó que representaba únicamente al señor Ramos Muñiz en la vista de divorcio por consentimiento mutuo. La situación antes descrita genera la posibilidad de que el licenciado López Bocanegra, efectivamente y en alguna medida, estuvo representando a ambos cónyuges. Además, como alega la señora Náter Cardona, ella estuvo desprovista de la asesoría legal necesaria para conocer el efecto que tendría la estipulación relacionada con la liquidación de la sociedad de gananciales sobre su derecho de la propiedad del inmueble que fue la residencia conyugal. Estas circunstancias pudieron provocar que, en la vista de divorcio, la señora Náter Cardona estuviese prácticamente en un estado de indefensión, ya que el abo-

---

(⁹) Posteriormente, los cónyuges se divorciaron por la causal de trato cruel.

gado que en alguna medida la representó, al citarla para decirle cuáles eran las estipulaciones que tenía que suscribir, posteriormente compareció únicamente a velar por los intereses del cónyuge que satisfizo sus honorarios. Esta situación no debe tolerarse.

El Canon 21 del Código de ética Profesional, 4 L.P.R.A. Ap. IX, establece que el abogado tiene para con sus clientes un deber de lealtad completa. El cumplimiento con este deber permite que el abogado obtenga de su cliente la más absoluta confianza. En los casos de divorcio por consentimento mutuo, el hecho que los abogados ejerzan sus funciones con absoluta lealtad e integridad evita que en el futuro surjan litigios entre las partes relacionados con las estipulaciones suscritas con la petición de divorcio. *Guías para uniformar el procedimiento de divorcio por consentimiento mutuo,* supra, Guía 2, págs. 16–17. Este deber de lealtad fue soslayado en el caso ante nos, ya que —aunque el licenciado López Bocanegra tuvo ante sí tanto al señor Ramos Muñiz, quien le encomendó la redacción de las estipulaciones, como a la señora Náter Cardona, a quien citó para decirle cuáles estipulaciones tenía que firmar y cuáles no— posteriormente defendió únicamente los intereses del señor Ramos Muñiz. Ello provocó que la señora Náter Cardona prácticamente se viese obligada a comparecer a la vista de divorcio por derecho propio, desconociendo el alcance de la estipulación relacionada con la liquidación de la sociedad legal de gananciales y sin contar con los medios económicos suficientes para contratar una representación legal, ni con la preparación y los conocimientos para representarse adecuadamente por derecho propio.

*En vista de estas circunstancias, resolvemos, con carácter prospectivo, que un abogado que es contratado por una de las partes para redactar las estipulaciones en un divorcio por consentimiento mutuo y que luego cita al otro cónyuge, quien acude sin representación legal, para*

*presentarle las estipulaciones con el propósito de que éste
las suscriba, no puede luego comparecer a la vista de divor-
cio en representación de uno solo de los cónyuges, ya que
ello contraviene los deberes de lealtad y de no representar
intereses encontrados establecidos en el Código de Ética
Profesional.* De otra parte, reiteramos el deber de que los
tribunales se cercioren de que las partes han recibido la
orientación legal adecuada para suscribir las estipulacio-
nes contenidas en una petición de divorcio por consenti-
miento mutuo de forma voluntaria e informada. Entende-
mos que estas medidas propenderán a que los intereses de
ambos cónyuges estén protegidos adecuadamente en los
procedimientos de divorcio por consentimiento mutuo, par-
ticularmente cuando uno de ellos está en desventaja eco-
nómica e intelectual frente al otro.

Es tomando en consideración este trasfondo que la se-
ñora Náter Cardona aduce que el tribunal debe ordenar el
relevo de la sentencia en lo relacionado a la liquidación de
la sociedad legal de gananciales, particularmente la esti-
pulación relacionada con la residencia conyugal.

■ Como indicamos previamente, por la naturaleza
de la acción de divorcio por consentimiento mutuo se han
unido en un solo caso lo que usualmente se tramita en
pleitos independientes: el divorcio y la liquidación de los
bienes gananciales. Este hecho, sin embargo, no desvirtúa
la naturaleza separada de estas causas de acción. No cabe
duda de que si lo que se pretende es que se releve a la
parte de la acción de divorcio en sí, dicha solicitud está
permeada de la sabia política pública que previamente he-
mos explicado de proteger la estabilidad del estado civil de
las personas. Obviamente esta razón no aplica a las esti-
pulaciones sobre la división de gananciales. El hecho de
que esta causa de acción esté unida a la acción de divorcio,
en las peticiones de divorcio por consentimiento mutuo, no
transforma su naturaleza. *La solicitud de relevo de la
causa de acción de liquidación de gananciales no está limi-*

*tada a fraude y nulidad. Por lo tanto, la señora Náter Cardona puede demostrar la procedencia del relevo de sentencia bajo cualesquiera de los incisos de la Regla 49.2, supra,* puesto que independientemente de lo solicitado por las partes, el tribunal concederá el remedio que en derecho proceda. *López v. Meléndez,* 143 D.P.R. 282, 291 (1997).

Al amparo del inciso (6) de la Regla 49.2 de Procedimiento Civil, *supra,* se podrá solicitar el relevo de sentencia por "cualquier otra razón que justifique la concesión de un remedio contra los efectos de una sentencia". De acuerdo con los profesores Wright, Miller y Kane, esta disposición le concede amplios poderes al tribunal para dejar sin efecto una sentencia cuando las circunstancias del caso así lo ameriten en aras de hacer justicia.

> Clearly it *broadens the grounds for relief from a judgment* set out in the five preceding clauses. It gives the courts ample power to vacate judgments whenever that action is appropriate to accomplish justice. (Énfasis suplido.) *Wright, Miller and Kane,* supra, Sec. 2864, pág. 350.

El absolutismo y automatismo no tienen cabida en nuestro sistema judicial, ya que nuestra crucial tarea de impartir justicia no lo permite. Flaco servicio haríamos a la justicia y a nuestra sociedad si aplicásemos la rígida norma de dar por resueltos todos los asuntos entre los ex cónyuges luego de una sentencia de divorcio por consentimiento mutuo, cuando uno de ellos aduce que fue víctima de la ventaja económica e intelectual que ostentaba el otro y que por causa de ello puede ver perjudicado su derecho de propiedad en los bienes que anteriormente pertenecían a la sociedad legal de gananciales.

A la luz de las circunstancias particulares del caso de autos y a los fines de evitar que pueda cometerse una injusticia, resolvemos que procede, al amparo de la Regla 49.2(6) de Procedimiento Civil, *supra,* relevar a la señora Náter Cardona de la estipulación sobre la liquidación de la sociedad legal de gananciales. En consecuencia, tanto el

foro apelativo intermedio como el de instancia incidieron al denegar el relevo de sentencia solicitado por entender que la señora Náter Cardona únicamente podía obtener dicho remedio si demostraba la existencia de fraude al tribunal.

## V

En virtud de los fundamentos antes expuestos, *revocamos el dictamen del Tribunal de Apelaciones, ordenamos el relevo de la estipulación relacionada con la liquidación de la sociedad legal de gananciales y devolvemos el caso al foro de instancia para la continuación de los procedimientos en torno a la liquidación de los bienes de dicha sociedad.*

Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado Señor Rivera Pérez disintió sin opinión escrita. Los Jueces Asociados Señores Rebollo López y Hernández Denton no intervinieron.