*664 TEXTO COMPLETO DE LA SENTENCIA
El señor David Rodríguez nos solicita la revisión de una orden que dictó el Tribunal de Primera Instancia, Sala de Familia y Menores de la Región Judicial de Bayamón. El dictamen recurrido declaró no ha lugar una moción de relevo de sentencia presentada por el señor Rodríguez.
Por entender que el Tribunal de Primera Instancia erró en su determinación, se expide el auto de certiorari y se revoca la resolución recurrida.
I
La señora Luz N. Rodríguez y el señor David E. Rodríguez son los padres de Ashley Marie Rodríguez Rodríguez. Doña Luz reclamó que se fije una pensión alimentaria para su hija. Ashley tiene 19 años, estudia ingeniería en la Universidad Politécnica de Puerto Rico y reside junto a su madre en una propiedad que tiene un pago mensual de $523 por concepto de hipoteca. Los gastos universitarios de Ashley, según concluyó la Examinadora de Pensiones Alimentarias (Examinadora), son de $700 trimestrales.
El Tribunal de Primera Instancia celebró una audiencia el 11 de septiembre de 2008 en la cual compareció, por derecho propio, doña Luz. Don David compareció asistido por su representante legal y se comprometió al pago de una pensión alimentaria provisional de $100 mensuales. El Tribunal de Instancia acogió el acuerdo y fijó la pensión provisional en la suma de $100 mensuales. [1] Durante la vista se citó a las partes para el 13 de noviembre de 2008 para una audiencia de alimentos ante la Examinadora.
Según surge del Informe de la Examinadora, el 13 de noviembre solamente compareció doña Luz por derecho propio. También se desprende de dicho informe que doña Luz solicitó la transferencia de la vista porque interesaba comparecer representada legalmente. Véase, Informe de la Examinadora de Pensiones Alimentarias, Apéndice parte recurrente, Anejo 7, pág. 9. La Examinadora transfirió la vista para el 18 de febrero de 2009.
Llegada la fecha de la audiencia, doña Luz compareció junto a su abogado y presentó su Planilla de Información Personal y Económica (P.I.P.E.). Según señala el Informe de la Examinadora, don David no compareció, a pesar de que fue notificado de la audiencia "a su dirección de record". [2] Véase, Apéndice, parte recurrente, Anejo 7, supra, pág. 9. La Examinadora determinó, como cuestión de hecho, que doña Luz desconocía el ingreso de don David y que éste tiene otros cuatro hijos.
A base del testimonio de doña Luz y de la P.I.P.E. presentada, la Examinadora recomendó al Tribunal que fijara una pensión alimentaria de $600 mensuales en beneficio de la menor, a partir de 22 de julio de 2008. [3] La Juez de Instancia dictó una resolución el 2 de marzo de 2009 mediante la cual acogió el informe de la Examinadora y fijó la pensión alimentaria en $600 mensuales.
Don David presentó una "Moción de relevo y/o nuevo juicio" y alegó que no compareció a la vista del 13 de noviembre de 2008 porque se olvidó del señalamiento por "error o negligencia excusable". Señaló que la dirección postal que obra en el expediente judicial es la correcta, que es la dirección de sus padres y que allí recibe toda su correspondencia, pero sostiene que no recibió la notificación de la audiencia que se celebró el 18 de febrero de 2009. Acompañó la moción de relevo con su declaración jurada y otra de su señora madre. En éstas se declaró bajo juramento que no recibió la notificación de la audiencia.
Don David explicó que para finales de septiembre de 2008 estuvo recibiendo un tratamiento médico en los Estados Unidos, realizó trámites para mudarse fuera de Puerto Rico y regresó a finales de diciembre. En enero de 2009 viajó nuevamente a los Estados Unidos y regresó el 18 de febrero de 2009. Por último, alegó que carecía de ingresos suficientes para pagar la pensión de $600 mensuales y sostener a sus otros cuatro hijos. Don *665 David solicitó el relevo de la sentencia y que se convocara a una audiencia.
Doña Luz se opuso a la solicitud y alegó que don David, ni siquiera le pagaba la pensión provisional impuesta por el Tribunal de Primera Instancia y que su ausencia a la vista del 13 de noviembre de 2008 fue injustificada. Además, sostuvo que el señalamiento para la vista de 18 de febrero de 2009 se envió a la dirección conocida y no fue devuelta, por lo cual, la Examinadora actuó correctamente al celebrar la audiencia.
El Tribunal de Primera Instancia dictó una resolución el 4 de mayo de 2009 mediante la cual denegó la moción de relevo o nuevo juicio. La resolución se notificó el 12 de mayo de 2009.
Inconforme con la determinación, don David recurrió al Tribunal de Apelaciones y sostuvo que erró el Tribunal de Primera Instancia al denegar la moción de relevo, al anotar la rebeldía en su contra y al aceptar la pensión determinada por la Examinadora.
Doña Luz se opuso a la expedición del certiorari. Teniendo el beneficio de la comparecencia de ambas partes, procedemos a resolver.
n
Es de rigor repasar algunos principios de derecho pertinentes al caso.
1. La pensión alimentaria de los menores de edad
La obligación de los progenitores de brindar alimentos a sus hijos menores de edad, no emancipados, es parte esencial del derecho a la vida, consagrado en las Secs. 1 y 7 del Art. II de la Constitución del Estado Libre Asociado de Puerto Rico, L.P.R.A. Tomo I. McConnell v. Palau, 161 D.P.R. 734, 747 (2004); Martínez v. Rodríguez, 160 D.P.R. 145, 151 (2003). Es por ello que los casos relacionados con alimentos de menores están revestidos del más alto interés público y que, en éstos, el interés principal es el bienestar del menor. Ferrer García v. González, 162 D.P.R. 172, 177 (2004); Argüello v. Argüello, 155 D.P.R. 62, 69-70 (2001); Negrón Rivera y Bonilla Ex Parte, 120 D.P.R. 61, 71-72 (1987).
Los alimentos entre parientes tienen su base estatutaria en el Código Civil de Puerto Rico, Artículos 142-151, 31 L.P.R.A. sees. 561-570. En el caso de alimentistas menores de edad, la fijación de la pensión alimentaria, a su vez, está regulada por legislación especial. Véase, Ley 178 de 1 de agosto de 2003, según enmendada, conocida como la Ley Orgánica de la Administración para el Sustento de Menores (Ley de ASUME), 8 L.P.R.A. see. 501 et seq., y las Guías para determinar y modificar las pensiones alimentarias en Puerto Rico, Reglamento 7135 de ASUME de 24 de mayo de 2006 (en adelante Guías Mandatorias).
El Artículo 142 del Código Civil de Puerto Rico, 31 L.P.R.A. see. 561, define alimentos como todo lo que es indispensable para el sustento, habitación, vestido y asistencia médica, según la posición social de la familia. Véase también, Guías Mandatorias, supra, Art. 4 (6). Además, los alimentos incluyen la educación e instrucción del alimentista, mientras éste sea menor de edad. Id.
Como regla general, la obligación del sustento de los hijos menores recae en ambos padres. 31 L.P.R.A. see. 601. No obstante, una vez roto el vínculo matrimonial, se divide entre los padres el pago de la pensión alimentaria en cantidad proporcional a su caudal respectivo. 31 L.P.R.A. see. 564; Figueroa v. Rivera, 149 D.P.R. 565, 572 (1999); López Martínez v. Yordán, 104 D.P.R. 594, 597 (1976).
La Ley de ASUME, 8 L.P.R.A see. 502, tiene como imperativo el poner en vigor una política pública de paternidad y maternidad responsable. Ésta señala que los padres de un menor son responsables de su manutención, por lo que el Tribunal podrá ordenarles a pagar una suma justa y razonable por concepto de *666 pensión alimentaria. 8 L.P.R.A. see. 503. Para determinar los recursos económicos del obligado a pagar una pensión alimentaria (persona no custodio), se toma en consideración, además del ingreso neto ordinario, el capital o patrimonio total del alimentante. 8 L.P.R.A. see. 518. Se considerarán iguales criterios para realizar el cómputo a serle imputada a la persona custodia. Id.
La pensión alimentaria se divide en dos partes, a saber: la pensión básica y la pensión suplementaria. La pensión básica cubre los gastos indispensables, recurrentes y cotidianos de un alimentista. Art. 4 de las Guías Mandatorias, supra. La pensión suplementaria se relaciona con aquellos gastos que tanto la persona no custodia como la persona custodia deben sufragar para satisfacer las necesidades del alimentista y que no se contemplan en la pensión alimentaria básica. Id. Entre éstos, se incluyen gastos, tales como los de salud no cubiertos por un seguro médico, educación y vivienda.
A los fines de facilitar el cómputo de la cuantía de la obligación alimentaria para beneficio de los menores de edad se crearon las Guías Mandatorias. Art. 3 de las Guías Mandatorias, supra. En lo pertinente, el Artículo 7 de las Guías Mandatorias, supra, pág. 10, establece cuáles serán los pasos a seguir para hacer el cómputo de la pensión alimentaria básica. Primero, se deberá determinar el ingreso bruto anual de la persona custodia y la no custodia. [4]
Para establecer el ingreso, las Guías Mandatorias establecen cuál será el ingreso que se le imputará a la persona custodio y no custodia, dependiendo de las circunstancias de sus oficios, formas de pago y si han vuelto a contraer matrimonio sin haber rechazado la sociedad legal de gananciales. Además, se establecen las circunstancias en que se podrá imputar a la persona custodia o no custodia el salario mínimo federal prevaleciente en Puerto Rico, el último salario devengado por la persona o una cantidad razonable, lo que resulte mayor. A esos efectos, el Artículo 7 de las Guías Mandatorias señala que se hará este tipo de imputación de ingreso cuando: (1) existan indicios o señales de que el ingreso de la persona custodia es mayor al que ésta informa; (2) la persona custodia o la no custodia esté desempleada o trabajando a tiempo parcial; o (3) la persona custodia o no custodia haya reducido su capacidad productiva para eludir la responsabilidad de alimentar. Art. 7 (A) (1(e)) de las Guías Mandatorias, supra, pág. 12.
Una vez determinada la pensión alimentaria (básica y suplementaria) que le corresponde pagar a la persona no custodia, se le restará a ese número el ingreso neto de ésta. Esto se hace para verificar que la persona no custodia conserve, al menos, quinientos quince dólares ($515) mensuales como reserva de ingresos para cubrir sus necesidades básicas. Art. 7 (E) (1) de las Guías Mandatorias, supra, pág. 27. No obstante esto, la pensión alimentaria no podrá ser menor de $100 mensuales, excepto cuando el juzgador determine que existe justa causa para ello. Art. 7 (E) (3) de las Guías Mandatorias, supra, pág. 28.
Pertinente al caso de autos, es importante señalar que la Ley de ASUME faculta al Oficial Examinador a celebrar la vista para determinar o modificar la pensión alimentaria en ausencia del promovido, luego de éste "haber sido debidamente notificado". 8 L.P.R.A see. 512 (c). En cuanto a la notificación de la vista, la Ley de ASUME dispone lo siguiente:
“La notificación-citación, junto con una copia de la petición, deberá ser diligenciada o notificada por la parte promovente con no menos de cinco (5) días de antelación a la fecha de la vista enviándola a la parte promovida, por correo certificado con acuse de recibo a su dirección, si ésta es conocida, estableciendo este conocimiento mediante declaración jurada al efecto; al momento de presentar la petición; o personalmente mediante el procedimiento utilizado para el diligenciamiento de emplazamientos.” 8 L.P.R.A. see. 514 (l)(b).
Además, el Oficial Examinador recibirá y evaluará la evidencia que le sea presentada durante la vista y rendirá un informe al Tribunal haciendo sus recomendaciones referentes a la fijación o modificaciones de las órdenes de pensión alimentaria. 8 L.P.R.A see. 512 (d). En el informe, el Examinador incluirá determinaciones *667 de hechos, conclusiones de derecho y recomendaciones sobre la pensión alimentaria. 8 L.P.R.A. see. 517 (5). El Juez podrá entonces hacer suyas las determinaciones, conclusiones y recomendaciones del examinador o hacer sus propias determinaciones de hechos o conclusiones de derecho con o sin vista previa y emitir la orden, resolución o sentencia que corresponda, la cual será notificada al alimentante y alimentista. Id.
2. La moción de relevo de sentencia
El mecanismo procesal disponible para solicitarle al foro de instancia el relevo de los efectos de una sentencia, orden o resolución, está regulado por la Regla 49.2 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III. Piazza v. Isla del Río, Inc., 158 D.P.R. 440, 448 (2003); Pardo Santos v. Sucn. Stella, 145 D.P.R. 816, 824 (1998). La Regla 49.2, supra, es un remedio extraordinario y discrecional que se ha utilizado para impedir que "tecnicismos y sofisticaciones frustren los fines de la justicia." Vázquez v. López, 160 D.P.R. 714, 726 (2003).
La Regla 49.2, supra, dispone que un tribunal podrá relevar a una parte o a su representante legal de una sentencia, orden o procedimiento, si existe alguna de las siguientes razones: (1) error, inadvertencia, sorpresa o negligencia excusable; (2) descubrimiento de evidencia esencial; (3) fraude; (4) nulidad de sentencia; (5) que la sentencia fue satisfecha o revocada; o (6) cualquier otra razón que justifique dejarla sin efecto. 32 L.P.R.A. Ap. III, Regla 49.2. La moción se presentará dentro de un término razonable, pero en ningún caso después de transcurridos seis (6) meses de haberse registrado la sentencia u orden o haberse llevado a cabo el procedimiento. Una moción bajo esta Regla 49.2, supra, no afectará la finalidad de una sentencia, ni suspenderá sus efectos.
El Tribunal Supremo ha expresado que la Regla 49.2, supra, "debe interpretarse iiberalmente y cualquier duda debe resolverse a favor del que solicita que se deje sin efecto una sentencia o anotación de rebeldía, a fin de que el proceso continúe y el caso pueda resolverse en sus méritos". Vázquez v. López, supra, pág. 726. Sin embargo, esto no constituye una facultad judicial absoluta. Piazza v. Isla del Río, Inc., supra, pág. 448. Los tribunales deben establecer un balance adecuado entre el interés de que haya certeza y estabilidad en los procedimientos judiciales y el de que se eviten demoras innecesarias en el trámite judicial. Id.
Es por ello que el Tribunal Supremo ha expresado que "[n]o se trata de una llave maestra para reabrir a capricho un pleito ya adjudicado, ni puede utilizarse en sustitución de los recursos de revisión y reconsideración." [5] Rivera v. Jaume, 157 D.P.R. 562, 574 (2002), reiterado en Piazza v. Isla del Río, Inc., supra, pág. 449; Imp. Vilca, Inc. v. Hogares Crea, Inc., 118 D.P.R. 679, 686 (1987). No obstante, "el inciso 6 de dicha Regla es amplio para permitir que se corrija un error a todas luces injusto". Imp. Vilca, Inc. v. Hogares Crea, Inc., supra, pág. 686.
Como regla general, la aplicación de la Regla 49.2, supra, es una decisión discrecional del tribunal, salvo los casos de nulidad de sentencia o cuando la sentencia ha sido ya satisfecha. Nacer v. Ramos, 162 D.P.R. 616, 624 (2004). Para que proceda el relevo de sentencia bajo la Regla 49.2, supra, es necesario que el peticionario justifique su solicitud, al menos, con una de las razones enumeradas en dicha regla. Reyes v. E.L.A. et al., 155 DPR 799, 813 (2001). Sin embargo, no basta con establecer uno de los fundamentos de relevo señalados en la regla; hay que persuadir al tribunal de que debe ejercitar su discreción a favor del relevo. Nacer v. Ramos, supra, pág. 625.
La doctrina establece que no es suficiente alegar que la omisión que dio lugar a que se dictase la sentencia se debió a error, inadvertencia, sorpresa o negligencia excusable. Dávila v. Hosp. San Miguel, Inc., 117 D.P.R. 807, 818 (1986). Hay que indicar los hechos que constituyen la justificación de la moción y la parte que la solicita no puede limitarse a utilizar las palabras de la regla sin ofrecer hechos específicos que justifiquen sus conclusiones. Dávila v. Hosp. San Miguel, Inc., supra, págs. 818-819.
*668 Cuando una parte presenta una moción de relevo de sentencia, el Tribunal Supremo ha señalado que:
“[E]l tribunal debe hacer un análisis y balance racional y justiciero de todo el expediente del caso para determinar si bajo las circunstancias especificas del caso hubo 'error, inadvertencia, sorpresa, o negligencia excusable' o 'no sería equitativo que la sentencia continuara en vigor’ o existe ‘cualquier... razón que justifique la concesión de remedio contra los efectos de una sentencia'.” Vázquez v. López, supra, pág. 726; Dávila v. Hosp. San Miguel, Inc., supra, 817.
Por último, al evaluar una solicitud de relevo de sentencia, el tribunal debe tomar en consideración, entre otros, los siguientes criterios: 1) si el peticionario tiene una buena defensa en sus méritos; 2) el tiempo que media entre la sentencia y la solicitud de relevo; y 3) el grado de perjuicio que pueda ocasionar a la otra parte la concesión del relevo de sentencia. Reyes v. E.L.A., et al., supra, pág. 810; Pardo v. Sucn. Stella, 145 D.P.R. 816, 825 (1998). Además, bajo los incisos 1 y 6 de la Regla 49.2, supra, es necesario que el promovente haya sido diligente en el trámite del caso. Neptune Packing Corp. V. Wackenhut Corp., 120 D.P.R. 283, 292 (1988); Dávila v. Hosp. San Miguel, Inc., supra, pág. 818.
3. Notificación por correo de las órdenes y sentencias del Tribunal:
La corrección de la notificación de la sentencia descansa en varias presunciones importantes. En primer lugar, se presume que una persona ha cumplido con los deberes de su cargo. Regla 16 (15) de Evidencia de 1979, 32 L.P.R.A. Ap. IV; Pueblo v. Laboy, 110 D.P.R. 164, 168 (1980).
En segundo lugar, la Regla 16 (24) de Evidencia, supra, dispone que una carta dirigida y cursada por correo debidamente, fue recibida. El hecho básico es el depósito en el correo y el hecho presumido es que fue recibido por el destinatario. Como toda presunción civil, se puede rebatir.
A esos efectos, la Regla 14 de Evidencia establece que, en una acción civil, la presunción impone a la parte contra la cual se establece la presunción el peso de la prueba para demostrar la inexistencia del hecho presumido. Si la parte no ofrece evidencia para demostrar la no existencia del hecho presumido, el juzgador debe aceptar la existencia de tal hecho. Por el contrario, si la parte presenta evidencia para rebatir la presunción, ésta debe persuadir al juzgador de que es más probable la no existencia que la existencia del hecho presumido.
m
La controversia planteada por don David entremezcla asuntos relacionados a la notificación de la vista de 18 de febrero de 2009, el derecho a ser oído y, por lo tanto, si se cumplió con el debido proceso de ley.
Conviene aclarar algunos aspectos procesales para luego proceder con la adjudicación.
Doña Luz presentó una moción por derecho propio en la que informó al Tribunal que su hija Ashley regresó a vivir con ella y solicita que se fije la pensión. La moción no incluyó una reclamación de cantidad de dinero específica.
El caso se notificó a don David y se pautó una audiencia para el 11 de septiembre de 2008. Ese día, don David compareció y se fijó una pensión provisional por la suma de $100 mensuales.
El caso fue citado para el 13 de noviembre de 2008. Doña Luz compareció, pero don David no. Se transfirió la audiencia, a petición de doña Luz, para el 18 de febrero de 2009 y ese día, don David no compareció. El expediente judicial refleja la certificación de la Secretaría del tribunal de que se le envió a don David una notificación del señalamiento a la dirección que obra en el expediente. No obstante, don David presentó dos declaraciones bajo juramento en las que afirmó que nunca recibió la notificación.
*669 En nuestro ordenamiento jurídico existe una presunción de que la notificación enviada por correo por la Secretaría del Tribunal a la dirección de don David fue recibida. No obstante, esta presunción puede ser rebatida. Junto con la solicitud de relevo presentada por don David, se incluyó las declaraciones juradas. Don David y su señora madre declararon, bajo juramento, que la notificación no se recibió.
Estas alegaciones, de ser probadas y creídas por el Tribunal de Instancia, rebatirían la presunción. La parte tiene derecho a presentar prueba para refutar la presunción.
Sin lugar a dudas, la Ley de ASUME permite que el Oficial Examinador lleve a cabo la vista para adjudicar la pensión alimentaria en ausencia de la parte promovida. Ahora bien, la Ley de ASUME requiere que la persona que está ausente sea notificada de la celebración de la audiencia. De lo contrario, se violaría la sección 512 (c) de la Ley de ASUME y, también, el debido proceso de ley de una persona que nunca se enteró que tenía que comparecer ante el foro judicial. [6]
Don David alegó que no es hasta que recibió la notificación de la resolución del Tribunal y la copia del informe, ambas notificadas el 27 de marzo de 2009, que se enteró de que se celebró una vista en su ausencia. En ese momento recurrió con diligencia al Tribunal de Primera Instancia para reclamar el relevo o la reconsideración de la sentencia.
Debemos señalar otro asunto de gran importancia para considerar los méritos de la moción de relevo o reconsideración. De las determinaciones de hechos de la Examinadora, surge que doña Luz demostró la necesidad de una pensión alimentaria de $600 mensuales. En el informe de la Examinadora se demuestra que no se presentó ninguna prueba sobre la capacidad económica de don David. Tampoco surge del informe que la Examinadora hubiese utilizado las Guías Mandatorias para imputarle ingresos a don David o que considerara en su análisis la existencia de los otros cuatro hijos menores de edad.
Lo cierto es que la Examinadora no recibió ninguna prueba sobre el ingreso de don David. Incluso, determinó como cuestión de hecho, que "[l]a promovente declaró que desconoce el ingreso del promovido. También desconoce en dónde se encuentra trabajando. Declaró que el promovido tenía un negocio propio... sin embargo, declaró que el negocio ya no está funcionando." Véase, Anejo 7, Apéndice parte recurrida, pág. 10.
Del Informe tampoco surge que la Examinadora le hubiese imputado ingresos a don David y no se hace referencia a las Guías Mandatorias para realizar el cómputo para calcular la pensión alimentaria. La Examinadora tampoco expresó que éste sea un caso en el cual sea injusto aplicar las Guías Mandatorias. De haber sido así, la Ley de ASUME le requería señalarlo expresamente. Además, el Informe no refleja que la Examinadora tomara en cuenta en el cálculo de la pensión que don David tiene otros cuatro hijos menores de edad a quienes, según se alega, también les paga una pensión alimentaria.
En el Informe quedó claro cuál es la necesidad económica de la hija Ashley, pero no la capacidad económica de don David para pagar una pensión alimentaria de $600 sin, tan siquiera, saber si se cumplía con el derecho a reserva que, como regla general, tiene la persona no custodia. Repetimos, no estamos ante un caso en el cual la persona custodia presentó prueba y declaró sobre la capacidad económica del padre no custodio.
Concluimos que don David tiene derecho a presentar prueba para refutar la presunción de que recibió la notificación de la audiencia judicial enviada a través del correo y, además, tiene una buena defensa en sus méritos en tomo a la pensión fijada y reclamó prontamente su derecho. El tiempo que medió entre la fecha en que se dictó la sentencia y la solicitud de relevo fue mínimo, por lo que no se ocasionaría perjuicio a la parte si se atiende la solicitud. Especialmente, cuando aún está vigente una pensión alimentaria provisional de $100 mensuales que don David está obligado a cumplir hasta que el Tribunal de Instancia determine otra cosa y, de no hacerlo, el Tribunal podrá atender el incumplimiento por la vía del desacato.
*670 En fin, procede devolver el caso al Tribunal de Primera Instancia para que dilucide la controversia sobre si, en efecto, la presunción de que don David recibió la notificación fue rebatida y determinar si procede la moción de relevo de sentencia.
IV
Por los fundamentos antes expuestos, se expide el auto de certiorari y se devuelve el caso al Tribunal de Primera Instancia para la continuación de los procedimientos, según lo aquí dispuesto.
Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal.
Leda. Dimarie Alicea Lozada Secretaria del Tribunal de Apelaciones
ESCOLIOS 2010 DTA 9

. Durante la vista, el señor Rodríguez entregó $100 en efectivo para cubrir la pensión del mes de septiembre.

. La audiencia se llevó a cabo en ausencia conforme lo permite el Art. 13(2)(c) de la Ley Especial de Sustento de Menores, 8 L.P.R.A. sec. 512(2)(c).

. Cabe señalar que la Examinadora concluyó que Don David tenía conocimiento de la vista de alimentos, ya que fue notificado por la Secretaría a su dirección de récord.

. Para efectos del cómputo, ingresos comprenderá "cualquier ganancia, beneficio, rendimiento o fruto derivado de sueldos, jornales o compensación por servicios personales, ...; o de profesionales, oficios, industrias, negocios, comercio o ventas; o de operaciones en propiedad, bien sea mueble o inmueble, que surjan de la posesión o uso del interés en tal propiedad; también los derivados de intereses, rentas, dividendos, beneficios de sociedad, valores o la operación de cualquier negocio explotado con fines de lucro o utilidad; y ganancias, beneficios, ... o compensación derivados de cualquier procedencia, incluyendo compensaciones como contratista independiente, compensaciones por desempleo, compensaciones por incapacidad, beneficios de retiro y pensiones o cualquier otro pago que reciba un alimentante de cualquier persona natural o jurídica". Art. 4 (15) de las Guías Mandatorias, supra, págs. 4-5.

. En armonía con lo anterior, el Tribunal Supremo ha resuelto que si se da alguna de las situaciones esbozadas en la Regla 49.2, se puede considerar una moción de reconsideración como una de relevo aun pasado el término para presentar una moción de reconsideración. Vázquez v. López, supra, 726.

. El Tribunal Supremo ha recalcado que entre los requisitos que se tiene que satisfacer en todo procedimiento adversativo para que no se viole el debido proceso de ley de una persona, en su vertiente procesal, es la notificación adecuada del proceso. Hernández v. Secretario, 164 D.P.R. 390, 395-396 (2005); Álvarez v. Arias, 156 D.P.R. 352, 365 (2002); Rivera Rodríguez & Co. v. Lee Stowell, etc., 133 D.P.R. 881, 888-880 (1993).