ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VIII

| MICHAEL ALLIO, en su capacidad de albacea y fiduciario de fideicomiso testamentario del Caudal de DAVID JOHN ALLIO LITTAUER<br><br>Demandante-Apelante<br><br>Vs.<br><br>CARMEN SANTIAGO CHARDÓN, por sí y en representación de sus hijos menores de edad, GIANCARLO ALLIO Y MIA ALLIO, herederos y miembros de la Sucesión de DAVID JOHN ALLIO LITTAUER<br><br>Demandados-Apelados | KLAN202400636 | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm. SJ2023CV10664<br><br>Sala: 603<br><br>Sobre:<br><br>ACCIÓN CIVIL, PARTICIÓN DE HERENCIA, REMEDIO PROVISIONAL Y SENTENCIA DECLARATORIA |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Monge Gómez y el Juez Cruz Hiraldo.

Cruz Hiraldo, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 31 de octubre de 2024.

Comparece la parte apelante, Michael Kelly Allio Littauer (señor Allio o parte apelante), mediante el presente recurso de apelación, y nos solicita la revisión de la *Sentencia* emitida el 31 de mayo de 2024 y notificada el 3 de junio de 2024 por el Tribunal de Primera Instancia, Sala Superior de San Juan (en adelante, TPI). A través de la referida *Sentencia*, el TPI declaró *Ha Lugar* la solicitud de sentencia sumaria presentada el 4 de abril de 2024 por Carmen Santiago Chardón (en adelante, señora Santiago Chardón o parte apelada), por sí y en representación de sus hijos menores de edad, Gian Carlo Allio Santiago (en adelante, GCAS) y Mia Allio Santiago (en adelante, MAS), miembros y herederos de la sucesión de David John Allio Littauer (en adelante Sucesión DJAL). En consecuencia,

se desestimó la *Acción Independiente de Relevo de Resolución (Sentencia) por Nulidad*, presentada por Michael Allio, en su capacidad de albacea fiduciario del fideicomiso testamentario del caudal de la Sucesión DJAL.

Por los fundamentos que exponemos a continuación, se *confirma* el dictamen apelado.

**I.**

El presente caso tiene su génesis con el matrimonio del Sr. David Allio y la Sra. Carmen Santiago, en el cual fueron procreados los menores GCAS y MAS. Estos estuvieron casados entre el 25 de agosto de 2025 al 3 de mayo de 2021. Decretado el divorcio el 19 de mayo de 2021, continuaron trámites procesales ante la Sala de Asuntos de Familia pertinentes a custodia permanente, relaciones filiales, y alimentos en donde las partes estuvieron en conversaciones transaccionales.

Posteriormente, el 25 y 26 de enero de 2023, David Allio y Carmen Santiago suscribieron bajo juramento, un acuerdo o contrato de transacción extrajudicial. Este último fue presentado mediante moción conjunta el 2 de febrero de 2023 ante el Tribunal para su aprobación. El 10 de febrero de 2023, el tribunal emitió una *Resolución* en la que acogió el acuerdo transaccional extrajudicial presentado por las partes. Sin embargo, el 12 de febrero de 2023, el Sr. David Allio falleció. Dicha determinación fue notificada a las partes el 13 de febrero de 2023.

El 14 de noviembre de 2023, Michael Allio, incoó una demanda titulada *Acción Independiente de Relevo de Resolución (Sentencia) por Nulidad.*[1] A través de esta, solicitó que se declarara la nulidad de la *Resolución* emitida por el TPI el 10 de febrero de 2023. De igual forma, adujo que, según el artículo 679 del Código

---

[1] Apéndice del Recurso de Apelación, págs. 15-28.

Civil de Puerto Rico, la obligación de dar alimentos se extingue por la muerte del alimentante.[2] Además, sostuvo que el derecho a la pensión alimentaria del excónyuge también podía extinguirse por la muerte del alimentante, tal y como establece el Artículo 468 del Código Civil. Finalmente, estableció que, aunque la *Resolución* fue emitida el 10 de febrero de 2023, la notificación de esta fue hecha un día después del fallecimiento de David Allio. Es por esto que aduce que, como cuestión de hecho y derecho se extinguieron las acciones, obligaciones y/o derechos personalísimos de este al segundo de su muerte. De este modo, Michael Allio argumentó que habían dejado de existir las controversias de alimentos, pues el padre ya no tenía la obligación de proveerle alimentos a sus hijos menores de edad, por razón de su fallecimiento. Consecuentemente, sostuvo que no subsistió alguna controversia justiciable ante la Sala de Relaciones de Familia, pues también dejó de existir el derecho al reclamo de hogar seguro y de la excónyuge recibir alimentos por parte del fallecido. Así pues, sostuvo que, dada la notificación de controversias ante la Sala de Familia, esta sala carecía de jurisdicción para notificar cualquier *Resolución,* como cuestión de derecho. Esto último, debido a que el fallecimiento de David Allio ocurrió antes de que la *Resolución* hubiese sido notificada y que se archivara en autos la copia de su notificación, por lo que se arguyó que la misma nunca advino final y firme.

Por su parte, el 1 de diciembre de 2023, Santiago Chardón presentó una *Moción de Desestimación.*[3] Adujo que las alegaciones presentadas por Michael Allio ya habían sido ventiladas y habían sido objeto de la *Resolución* en el caso civil SJ2023CV07752. Así las cosas, el 14 de diciembre de 2023, Michael Allio presentó una *Oposición a Mocion de Desestimación.* En la referida, expuso que no

---

[2] Ley Núm. 55-2020, 31 LPRA sec. 5311 ( en adelante Código Civil).
[3] Apéndice del Recurso de Apelación, págs. 51-52.

procedía la desestimación de la demanda bajo la Regla 10.2 de Procedimiento Civil,[4] debido a que no se estableció con precisión en el escrito presentado, cuál inciso de la Regla 10.2 se estaba invocando. Asimismo, reiteró que aun si el tribunal determinase que procedía la moción, debía aplicar la doctrina de acción independiente de nulidad de sentencia. De igual forma, sostuvo que había instado una acción independiente porque el caso en el cual fue dictada la *Resolución* no tenía jurisdicción luego del fallecimiento de David Allio.

Luego de varias instancias procesales que conllevaron un extenso trámite litigioso, el 12 de marzo de 2023, Santiago Chardón presentó su *correspondiente Contestación a Demanda de Acción de Nulidad,*[5] en la misma, negó algunas de las alegaciones contenidas en la demanda. De igual forma, reiteró que el tribunal carecía de jurisdicción y competencia para atender la acción de nulidad por razón de que un tribunal de igual jerarquía había emitido una *Resolución* objeto de este pleito. Por último, afirmó que la presente causa de acción estaba prescrita, y sostuvo la contención de que la demanda dejó de exponer una reclamación que justificara la concesión de un remedio.

Posteriormente, el 8 de enero de 2024,[6] el TPI emitió una *Resolución* en el caso SJ2023CV07752 en la que estableció que no haría ningún dictamen con relación a los $50,000 por tratarse de un asunto que estaba siendo atendido por otra sala y el desembolso de los mismos quedaba sujeto a lo que el tribunal resolviera en el presente caso SJ2023CV10664.[7]

Así las cosas, el 15 de marzo de 2024, la parte apelante presentó una *Urgente Moción en Solicitud de Reconsideración y en*

---

[4] 32 LPRA AP. V. R.10.2
[5] Apéndice del Recurso de Apelación, págs. 123-125.
[6] Notificada el 9 de enero de 2024.
[7] Apéndice del Recurso de Apelación, págs. 74-75.

*Solicitud se Dicte Sentencia por las Alegaciones al Amparo de la Regla 10.3 de Procedimiento Civil.*[8] Arguyó que procedía aplicar la Regla 10.3 de Procedimiento Civil puesto que no se presentaron todas las alegaciones y la parte demandada no mostró causa de por qué no controvirtió ninguno de los hechos alegados en la demanda. Así pues, argumentó que procedía que el tribunal dictara sentencia sin ulterior consideración, al amparo de la regla antes mencionada.

En respuesta, el 4 de abril de 2024, la señora Santiago Chardón presentó una *R[é]plica Urgente Moci[ó]n en Solicitud de Reconsideraci[ó]n y en Solicitud se dicte S[e]ntencia por las Alegaciones al Amparo de la Regla 10.3 de las de Procedimiento Civil y en Solicitud de Sentencia Sumaria.*[9] Expuso que el caso versaba sobre una acción de cobro de dinero contractual y que siendo esta una obligación no personalísima, se transfería por sucesión. Sostuvo que la *Resolución* notificada el 13 de febrero de 2023, además de obligaciones personalísimas no transferibles, también contenía una obligación de David Allio (causante) a favor de Santiago Chardón. Estableció que, la referida obligación advino a la vida mediante negocio jurídico.

Además, expuso que el contrato entre ella y David Allio contenía una condición suspensiva, la cual nunca pudo ejecutarse a consecuencia del fallecimiento de este último. Puntualizó que la condición suspensiva en el caso de autos era la firma del contrato por las partes y la aprobación del tribunal y que del contrato entre las partes no surge que la validez del contrato se encontraba sujeta a la notificación del tribunal sobre la aceptación del acuerdo. Además, expuso que los $50,000 adeudados a su persona no eran en concepto de pensión alimentaria ni patria potestad, por lo que no

---

[8] Apéndice del Recurso de Apelación, págs. 130-133.
[9] *Íd.* págs. 136-144.

era aplicable el precitado artículo del Código Civil referente a la extinción de esa obligación.

Por lo mismo, solicitó que se dispusiera el caso por la vía sumaria, siendo los asuntos pendientes de estricto derecho y habiendo sido plasmado el Contrato de Transacción entre las partes mediante *Resolución*.

El 25 de abril de 2024, la parte apelante presentó una *Oposición a Frívola, Improcedente y Atropellada Solicitud de Sentencia Sumaria.*[10] A través de la referida, reiteró que la acción de nulidad sólo perseguía que el tribunal atendiera y adjudicara la controversia sobre si la *Resolución* emitida por la Sala de Familia adolecía de nulidad o no, ante el hecho incontrovertible de que la misma nunca fue notificada conforme a derecho, y por lo tanto, no advino final y firme. Por lo tanto, la misma no era ejecutable por ser nula.

Luego de evaluar la posición de las partes, el 31 de mayo de 2024, el TPI emitió la *Sentencia* que nos ocupa. En la referida, declaró *Ha Lugar* la solicitud de sentencia sumaria presentada por la señora Santiago Chardón, por sí y en representación de sus hijos menores de edad, GCAS y MAS, miembros y herederos de la Sucesión DJAL. Consecuentemente, se desestimó la *Acción Independiente de Relevo de Resolución (Sentencia) por Nulidad*, presentada por Michael Allio, en su capacidad de albacea fiduciario del fideicomiso testamentario del caudal de David Allio. En la *Sentencia*, el TPI esbozó las siguientes determinaciones de hechos:

1. Durante algunos trámites procesales ante la Sala de Relaciones de Familia en el caso SJ2021RF00135, el Sr. David John Allio Littauer y la Sra. Carmen Santiago Chardón mantuvieron conversaciones transaccionales sobre la adjudicación de asuntos relacionados a la custodia, patria potestad, relaciones filiales, alimentos de los hijos y de excónyuges, y petición de hogar seguro.

2. Producto de dichas conversaciones, el Sr. David John Allio Littauer y la Sra. Carmen Santiago Chardón suscribieron un contrato de acuerdo o estipulación transaccional extrajudicial,

---

[10] Apéndice del Recurso de Apelación, págs.159-163.

el cual disponía de todas las controversias pendientes entre estos hasta el momento.

3. El 24 y 26 de enero de 2023, respectivamente, ambas partes, el Sr. David John Allio Littauer y Santiago Chardón, suscribieron bajo juramento el acuerdo o contrato de transacción extrajudicial que fue redactado en inglés y español, por motivo de que el Sr. Allio Littauer solo era angloparlante.

4. El 2 de febrero de 2023, las partes presentaron conjuntamente una moción ante el Tribunal, Sala de Familia, para que aprobara y aceptara el Acuerdo de Transacción.

5. El 12 de febrero de 2023, falleció el Sr. David John Allio Littauer.

6. El 13 de febrero de 2023, el tribunal, en el Caso Civil Núm. SJ2022RF00135, notificó una *Resolución,* emitida el 10 de febrero de 2023, en la que acogió el Acuerdo Transaccional entre Santiago Chardón y Allio Littauer.

7. La *Resolución* que emitió el Tribunal se limitó a los asuntos para los cuales la Sala de Relaciones de Familia tenía Jurisdicción y competencia.

Inconforme con el dictamen del Tribunal de Primera Instancia, el 3 de julio de 2024 el apelante presentó este recurso de apelación ante nos, donde le imputó al foro apelado los siguientes señalamientos de error:

PRIMER ERROR: ERRÓ EL TRIBUNAL Y ACTUÓ SIN JURISDICCIÓN AL ADJUDICAR UNA CONTROVERSIA SOBRE OBLIGACIÓN CONTRACTUAL PRESENTADA POR LA DEMANDADA, MEDIANTE SENTENCIA SUMARIA, CUANDO DICHO ASUNTO ESTÁ BAJO LA JURISDICCIÓN DE OTRA SALA HERMANA MEDIANTE LA SOLICITUD DE RECONVENCIÓN DE LA DEMANDADA EN DICHO FORO.

SEGUNDO ERROR: ERRÓ EL TRBUNAL DE PRIMERA INSTANCIA AL DESESTIMAR LA ACCIÓN DE NULIDAD, ÚNICA CONTROVERSIA JUSTICIABLE, FALTANDO A SU DEBER MINISTERIAL. INCURRIÓ EN ABUSO DE DISCRECIÓN AL ACTUAR EN CONTRA DE SU PROPIA RESOLUCIÓN, QUE ES LA LEY DEL CASO, EN LA QUE DETERMINÓ QUE LA ÚNICA CONTROVERSIA QUE TENÍA ANTE SÍ ERA DE DERECHO SOBRE SI LA RESOLUCIÓN CUESTIONADA ADOLECÍA O NO DE NULIDAD ABSOLUTA, AL AMPARO DE LA REGLA 49 DE LAS DE PROCEDIMIENTO CIVIL Y DEL DERECHO APLICABLE.

Examinado el recurso en su totalidad y con la comparecencia de las partes, procedemos a establecer el derecho aplicable y resolver.

**II.**

**A.**

El mecanismo de sentencia sumaria provisto en la Regla 36 de Procedimiento Civil de 2009[11], es un vehículo para asegurar la solución justa, rápida y económica de un caso.[12] Dicho mecanismo permite a los tribunales disponer, parcial o totalmente, de litigios civiles en aquellas situaciones en las cuales no exista controversia material de hecho que requiera ventilarse en un juicio plenario y el derecho así lo permita.[13] Este mecanismo lo puede utilizar la parte reclamante o aquella parte que se defiende de una reclamación.[14]

Mediante el mecanismo de sentencia sumaria, se procura profundizar en las alegaciones para verificar si, en efecto, los hechos ameritan dilucidarse en un juicio.[15] Este cauce sumario resulta beneficioso tanto para el tribunal, como para las partes en un pleito, pues se agiliza el proceso judicial, mientras simultáneamente se provee a los litigantes un mecanismo procesal encaminado a alcanzar un remedio justo, rápido y económico.[16] Como se sabe, en aras de prevalecer en una reclamación, la parte promovente debe presentar prueba incontrovertible sobre todos los elementos indispensables de su causa de acción.[17]

Nuestro ordenamiento civil y su jurisprudencia interpretativa impone unos requisitos de forma con los cuales hay que cumplir al momento de presentar una solicitud de sentencia sumaria, a saber: (1) una exposición breve de las alegaciones de las partes; (2) los asuntos litigiosos o en controversia; (3) la causa de acción sobre la

---

[11] 32 LPRA Ap. V, R. 36.
[12] *Serrano Picón v. Multinational Life Ins.*, 212 DPR 981 (2023); Oriental Bank v. Caballero García, 212 DPR 671 (2023); G*onzález Meléndez v. Municipio Autónomo de San Juan y otros*, 212 DPR 601 (2023); *Acevedo y otros v. Depto. Hacienda y otros*, 212 DPR 335 (2023); *Universal Ins. y otro. v. ELA y otros.*, 211 DPR 455 (2023).
[13] *Segarra Rivera v. Int'l. Shipping et al.*, 208 DPR 964 (2022).
[14] 32 LPRA Ap. V, R. 36.1 y 36.2.
[15] *León Torres v. Rivera Lebrón*, 204 DPR 20, 42 (2020).
[16] *Íd.*
[17] *Íd.*

cual se solicita la sentencia sumaria; (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal; (5) las razones por las cuales se debe dictar la sentencia, argumentando el derecho aplicable, y (6) el remedio que debe ser concedido.[18] Si la parte promovente de la moción incumple con estos requisitos, "el tribunal no estará obligado a considerar su pedido".[19]

Por otro lado, "la parte que desafía una solicitud de sentencia sumaria no puede descansar en las aseveraciones o negaciones consignadas en su alegación".[20] Por el contrario, quien se opone a que se declare con lugar esta solicitud viene obligado a enfrentar la moción de su adversario de forma tan detallada y específica como lo ha hecho la parte promovente puesto que, si incumple, corre el riesgo de que se dicte sentencia sumaria en su contra, si la misma procede en derecho.[21]

Por ello, en la oposición a una solicitud de sentencia sumaria, la parte promovida debe puntualizar aquellos hechos propuestos que pretende controvertir y, si así lo desea, someter hechos materiales adicionales que alega no están en disputa y que impiden que se dicte sentencia sumaria en su contra.[22] Claro está, para cada uno de estos supuestos deberá hacer referencia a la prueba específica que sostiene su posición, según exigido por la antes citada Regla 36.3 de Procedimiento Civil.[23] En otras palabras, la parte opositora tiene el

---

[18] 32 LPRA Ap. V, R. 36.3; *Oriental Bank v. Caballero García*, en la pág. 8*; Pérez Vargas v. Office Depot*, 203 DPR 687 (2019).
[19] *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 111 (2015).
[20] *León Torres v. Rivera Lebrón*, en la pág. 43.
[21] *Íd.*
[22] *Íd.*
[23] *Íd.*

peso de presentar evidencia sustancial que apoye los hechos materiales que alega están en disputa.[24] De lo anterior, se puede colegir que, ante el incumplimiento de las partes con las formalidades de la Regla 36 de Procedimiento Civil de 2009, la consideración de sus posiciones descansa en la sana discreción del Tribunal.

Al atender la solicitud, el Tribunal deberá asumir como ciertos los hechos no controvertidos que se encuentren sustentados por los documentos presentados por la parte promovente.[25] Toda inferencia razonable que pueda surgir de los hechos y de los documentos se debe interpretar en contra de quien solicita la sentencia sumaria, pues solo procede si bajo ningún supuesto de hechos prevalece la parte promovida.[26]. Además, al evaluar los méritos de una solicitud de sentencia sumaria, el juzgador o juzgadora debe actuar guiado por la prudencia y ser consciente, en todo momento, que su determinación puede conllevar el que se prive a una de las partes de su "día en corte", componente integral del debido proceso de ley.[27]

Sin embargo, la sentencia sumaria generalmente no procederá cuando existan controversias sobre hechos esenciales materiales, o si la controversia del caso está basada en elementos subjetivos como intención, propósitos mentales, negligencia o credibilidad.[28] Un hecho material es aquel que puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable.[29] Ahora bien, el Foro de última instancia ha reiterado que cualquier duda no es suficiente para derrotar una moción de sentencia sumaria, pues

---

[24] *Íd.*

[25] *E.L.A. v. Cole*, 164 DPR 608, 626 (2005).

[26] *Íd.*, en la pág. 625.

[27] *León Torres v. Rivera Lebrón*, en la pág. 44.

[28] *Acevedo y otros v. Depto. Hacienda y otros; Segarra Rivera v. Int'l. Shipping et al.*, 208 DPR en la págs. 980-981.

[29] *Oriental Bank v. Caballero García*, en la pág. 7; *Mejías et al. v. Carrasquillo et al.*, 185 DPR 288, 299 (2012); *Ramos Pérez v. Univisión*, 178 DPR 200, 213 (2010).

debe tratarse de una incertidumbre que permita concluir que existe una controversia real sobre hechos relevantes y pertinentes.[30]

El Tribunal Supremo de Puerto Rico ha discutido los criterios que este Tribunal de Apelaciones debe considerar al momento de revisar una sentencia dictada sumariamente por el foro de instancia.[31] Sobre ese particular, nuestro más Alto Foro señaló que:

> [E]l Tribunal de Apelaciones debe: (1) examinar de *novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, y la jurisprudencia le exigen al foro primario; (2) revisar que tanto la Moción de Sentencia Sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36; (3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos, y (4) de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar de novo si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia. [32]

Conforme a lo anterior, nos encontramos en la misma posición que el Tribunal de Primera Instancia para evaluar la procedencia de una sentencia sumaria.[33] Por ello, nuestra revisión es una de *novo* y nuestro análisis debe regirse por las disposiciones de la Regla 36 de Procedimiento Civil, así como de su jurisprudencia interpretativa.[34] A tenor con la referida normativa, dicha revisión se realizará de la manera más favorable hacia la parte que se opuso a la solicitud de sentencia sumaria en el foro de origen y realizando todas las inferencias permisibles a su favor.[35] De esta manera, si entendemos que los hechos materiales realmente están

---

[30] *Íd.*

[31] *Roldán Flores v. M. Cuebas et al.*, 199 DPR 664, 679-680 (2018); *Meléndez González et al. v. M. Cuebas*, 193 DPR en las págs. 118-119.

[32] *Roldán Flores v. M. Cuebas et al.*, 199 DPR en la pág. 679.

[33] *Birriel Colón v. Supermercado Los Colobos (Econo Rial, Inc.) e Integrand Assurance Company*, 2023 TSPR 120, resuelto el 3 de octubre de 2023; *Serrano Picón v. Multinational Life Insurance Company*, 212 DPR en la pág. 993; *González Meléndez v. Municipio Autónomo de San Juan y otros*, 212 DPR en la pág. 611.; *González Santiago v. Baxter Healthcare*, 202 DPR 281, 291 (2019).

[34] *González Meléndez v. Municipio Autónomo de San Juan y otros*, 212 DPR en la pág. 618.

[35] *Meléndez González et al. v. M. Cuebas*, 193 DPR en la pág. 118.

incontrovertidos, debemos revisar de *novo* si el foro primario aplicó correctamente el derecho.[36]

**B.**

En nuestro ordenamiento rige el principio de la libertad de contratación o la autonomía de la voluntad.[37] Ello quiere decir que nadie está obligado a contratar.[38] Este principio se articula en el Artículo 1232 del Código Civil, el cual dispone, en lo aquí pertinente, que: "[e]s facultativo contratar o no hacerlo, y hacerlo, o no, con determinada persona. Estos derechos no pueden ejercerse abusivamente ni contra una disposición legal. Las partes pueden acordar cualquier cláusula que no sea contraria a la ley, a la moral o al orden público"[39] y tienen fuerza de ley entre las partes, ante sus sucesores y ante terceros.[40]

No obstante, según se reconoce expresamente en el precitado artículo, el principio de libertad de contratación no es absoluto y está sujeto a la intervención de los tribunales si se establecen pactos contrarios a las leyes, a la moral o al orden público.[41] Es por ello que, independientemente del tipo de contrato que se trate y de la importancia que éste merezca para las partes contratantes, es nulo, y por lo tanto, inexistente un contrato, que resulte contrario a las leyes, a la moral o al orden público.[42] Ahora bien, cuando un contrato es legal y válido, y no contiene vicio alguno, los tribunales no pueden relevar a una parte de su cumplimiento.[43]

En tanto negocios jurídicos la interpretación de los contratos se rige por el esquema dispuesto en el Código Civil, a saber:

---

[36] *González Meléndez v. Municipio Autónomo de San Juan y otros*, 212 DPR en la pág. 611.

[37] *Coop. Sabaneña v. Casiano Rivera*, 184 DPR 169, 173 (2011); *De Jesús González v. A.C.* 148 DPR 255, 263 (1999).

[38] *PRFS v. Promoexport*, 187 DPR 42, 55 (2012).

[39] 31 LPRA sec. 9753.

[40] *Íd*, sec. 9754.

[41] *Coop. Sabaneña v. Casiano Rivera*, supra; *De Jesús González v. A.C.* supra.

[42] *Aponte Valentín v. Pfizer Pharmaceuticals, LLC*, 208 DPR 263, 300 (2021); *Morales v. Mun. de Toa Baja*, 119 DPR 682, 693 (1987).

[43] *De Jesús González v. A.C.,* supra, pág. 271; *Mercado, Quilinchini v. U.C.P.P.R.*, 143 DPR 610 (1997).

En la interpretación del negocio jurídico son de aplicación las siguientes reglas:

> (a) Se presume que el negocio jurídico se otorga de buena fe; y
> (b) Si el negocio jurídico es unilateral [...]
> Si los términos de un negocio jurídico bilateral son claros y no dejan duda sobre la intención de las partes, se estará al sentido literal de sus palabras.
> Si las palabras parecen contrarias a la intención evidente de las partes, prevalecerá la intención sobre lo expresado.
> Para determinar la intención en ambos casos, debe atenderse principalmente a la conducta de la parte, sea coetánea, posterior o aun anterior al otorgamiento del negocio jurídico.[44]

Asimismo, las cláusulas de un negocio jurídico deben interpretarse de manera integrada, esto es, las unas por medio de las otras y mediante la atribución del sentido apropiado al conjunto.[45]

Uno de los tipos de contratos reconocidos en nuestro ordenamiento jurídico es el contrato por transacción, el cual está regulado por los artículos 1497-1504 del Código Civil de Puerto Rico.[46] Por el referido contrato, mediante concesiones recíprocas, las partes ponen fin a un litigio o incertidumbre sobre una relación jurídica.[47] El mismo debe ser interpretado de forma restrictiva y produce los efectos de cosa juzgada.[48] La transacción debe constar en un escrito firmado por las partes o en una resolución o una sentencia dictada por el tribunal. Si se refiere a derechos constituidos mediante escritura pública, se requiere esta formalidad.[49]

## C.

La Regla 49.2 de las de Procedimiento Civil establece el mecanismo procesal disponible para solicitar el relevo de los efectos

---

[44] *Íd*, sec. 6342.
[45] *Íd*, sec. 6344.
[46] *Íd*, secs. 4821 a 4830.
[47] *Íd*, sec. 10641.
[48] *Íd*, secs. 10643-10644.
[49] *Íd*, sec. 10647.

de una sentencia cuando esté presente alguno de los fundamentos allí expuestos.[50] Esta regla provee un mecanismo post sentencia para impedir que se frustren los fines de la justicia mediante tecnicismos y sofisticaciones.[51] Este remedio permite al tribunal hacer un balance entre dos intereses en conflicto: de una parte, que toda litigación sea concluida y tenga finalidad y de otra, que en todo caso se haga justicia.[52]

Ahora bien, independientemente de la existencia de uno de los fundamentos en la Regla 49.2 de Procedimiento Civil, relevar a una parte de los efectos de una sentencia es una decisión discrecional, salvo en los casos de nulidad o cuando la sentencia ha sido satisfecha.[53] La Regla 49.2 de Procedimiento Civil, dispone específicamente, como sigue:

> Mediante una moción y bajo aquellas condiciones que sean justas, el tribunal podrá relevar a una parte o a su representante legal de una sentencia, orden o procedimiento por las razones siguientes:
>
> (a) Error, inadvertencia, sorpresa, o negligencia excusable;
>
> (b) Descubrimiento de evidencia esencial que, a pesar de una debida diligencia, no pudo haber sido descubierta a tiempo para solicitar un nuevo juicio de acuerdo con la Regla 48;
>
> (c) Fraude (incluyendo el que hasta ahora se ha denominado intrínseco y también el llamado extrínseco), falsa representación u otra conducta impropia de la parte adversa;
>
> (d) Nulidad de la sentencia;
>
> (e) La sentencia ha sido satisfecha, renunciada, o se ha cumplido con ella, o la sentencia anterior en que se fundaba ha sido revocada o de otro modo dejada sin efecto, o no sería equitativo que la sentencia continuare en vigor; o
>
> (f) Cualquier otra razón que justifique la concesión de un remedio contra los efectos de una sentencia.
>
> Las disposiciones de esta regla no serán aplicables a las sentencias dictadas en pleitos de divorcio, a menos que

---

[50] 32 LPRA Ap. V, R.49.2.
[51] *García Colón et al. v. Sucn. González*, 178 DPR 527, 539 (2010).
[52] *Náter v. Ramos*, 162 DPR 616, 624 (2004).
[53] *Íd*, en pág. 624.

la moción se funde en las razones (c) o(d) de esta regla. La moción se presentará dentro de un término razonable, pero en ningún caso después de transcurridos seis (6) meses de haberse registrado la sentencia u orden o haberse llevado a cabo el procedimiento. Una moción bajo esta Regla 49.2 no afectará la finalidad de una sentencia ni suspenderá sus efectos. Esta regla no limita el poder del tribunal para:

(1) conocer de un pleito independiente con el propósito de relevar a una parte de una sentencia, una orden o un procedimiento;

(2) conceder un remedio a una parte que en realidad no haya sido emplazada, y

(3) dejar sin efecto una sentencia por motivo de fraude al tribunal.[54]

[...]

Para que proceda el relevo de sentencia bajo la Regla 49.2 de Procedimiento Civil, el peticionario del relevo está obligado a justificar su solicitud amparándose en una de las causales establecidas en la regla.[55] Por igual, el Tribunal Supremo de Puerto Rico ha expresado con relación a la Regla 49.2 de Procedimiento Civil[56]: "que el precepto debe interpretarse liberalmente y cualquier duda debe resolverse a favor del que solicita que se deje sin efecto una sentencia o anotación de rebeldía, a fin de que el proceso continúe y el caso pueda resolverse en sus méritos". Este precepto no está disponible para alegar cuestiones sustantivas que debieron ser planteadas mediante los recursos de reconsideración y apelación.[57] Por su parte, el inciso (4) de la Regla 49.2 de Procedimiento Civil otorga al Tribunal la facultad de relevar a una parte de los efectos de una sentencia cuando se determine su nulidad. Una sentencia es nula cuando se ha dictado sin jurisdicción o cuando al dictarla se ha quebrantado el debido proceso de ley.[58]

---

[54] 32 LPRA Ap. V, R.49.2.
[55] *García Colón et al. v. Sucn. González*, 178 DPR en pág. 540.
[56] *Íd* en la pág. 541.
[57] *Íd.*
[58] *Íd.*, en la pág. 543.

Bajo este fundamento, no hay margen de discreción. Es decir, si una sentencia es nula, tiene que dejarse sin efecto independientemente de los méritos que pueda tener la defensa o la reclamación del perjudicado. Sobre el particular, se ha resuelto que:

[L]a discreción que tiene un tribunal, al amparo de las disposiciones de la referida Regla 49.2 de Procedimiento Civil, para relevar a una parte de los efectos de una sentencia resulta inaplicable cuando se trata de una sentencia que es "nula"; si es nula, no hay discreción para el relevo, hay obligación de decretarla nula. En consecuencia, ante la certeza de nulidad de una sentencia, es mandatorio declarar su inexistencia jurídica, independientemente de que la solicitud a tales efectos se haga con posterioridad a haber expirado el plazo de seis (6) meses que establece la Regla 49.2 de Procedimiento Civil.[59] Para ello, la propia regla dispone que el tribunal puede conocer un pleito independiente transcurrido el término de seis (6) meses cuando la parte promovente plantea la nulidad de una sentencia.[60] Dentro del contexto de esta regla, una sentencia es nula cuando el tribunal ha actuado de una manera incompatible con el debido procedimiento de ley. [61]

Al respecto, nuestro Foro Judicial máximo expresó en *Figueroa v. Banco de San Juan* lo siguiente:

> El esquema amplio y abarcador de remedios que provee la Regla 49.2 reduce considerablemente el ejercicio de esta acción independiente a los casos en que ha transcurrido el término fatal de seis meses y las circunstancias sean de tal índole que el tribunal pueda razonablemente concluir que mantener la sentencia constituiría una grave injusticia contra una parte que no ha sido negligente en el trámite de su caso y que, además, tiene una buena defensa en los méritos.[62]

---

[59] *Montañez v. Policía de Puerto Rico*, 150 DPR 917, 921–922 (2000); *Bco. Santander P.R. v. Fajardo Farms Corp.*, 141 DPR 237, 243–244 (1996); *Figueroa v. Banco de San Juan*, 108 DPR 680, 689 (1979); *García Colón et al. v. Sucn. González*, 178 DPR en las págs. 543–544.

[60] *Santander P.R. v. Fajardo Farms Corp.*, 141 DPR en la pág. 247.

[61] *Rivera v. Jaume*, 157 DPR 562, 574 (2002) citando *ELA v. Tribunal Superior*, 86 DPR 692 (1962).

[62] *Figueroa v. Banco de San Juan.*, *108 DPR* en la pág. 609.

Surge claramente que la posibilidad de instar un pleito independiente se reserva para situaciones excepcionales cuando es imposible solicitar el relevo dentro del mismo pleito. En fin, es un mecanismo de excepción para circunstancias en las que no están disponibles los remedios procesales dentro de un pleito. De lo contrario, el pleito independiente para el relevo de una determinación se convertiría en "un mero mecanismo procesal para extender indirectamente el término de revisión en menoscabo del interés fundamental en la estabilidad y certeza de los procedimientos judiciales".[63]

Esbozada la norma jurídica, procedemos a aplicarla al recurso ante nos.

**III.**

Como primer señalamiento de error, la parte apelante esboza que erró el TPI al actuar sin jurisdicción y adjudicar una controversia sobre obligación contractual presentada por la parte apelada, mediante una sentencia sumaria, cuando dicho asunto se encuentra bajo la jurisdicción de otra sala hermana mediante la solicitud de reconvención de la demanda en dicho foro. Por otro lado, como segundo señalamiento de error el apelante esgrime que erró el TPI al desestimar la acción de nulidad. Sobre esto, arguye que el foro apelado incurrió en abuso de discreción al actuar en contra de su propia resolución en la que determinó que la única controversia que tenía ante sí era la determinación de si la Resolución cuestionada adolecía o no de nulidad absoluta al amparo de la Regla 49 de las Reglas de Procedimiento Civil. Por estar íntimamente relacionados, procedemos a discutir ambos errores de forma conjunta.

Previo a comenzar la discusión formal del caso, es meritorio enfatizar que el presente recurso apelativo está relacionado a tres

---

[63] *Íd.*, en la pág. 688.

procesos judiciales que se llevaron a cabo de forma independiente. El primero, es el caso SJ2021RF00135 sobre divorcio y es donde se emitió la *Resolución* apelada en el presente caso. El segundo, es caso SJ2023CV07752 sobre acción civil, partición de herencia, remedio provisional y sentencia declaratoria. Finalmente, el tercer caso fue el SJ2023CV10664 sobre acción civil de nulidad al amparo de la Regla 49.2 de Procedimiento Civil.

Por otro lado, en lo pertinente al cobro de dinero que hace Santiago Chardón, el contrato entre las partes establece lo siguiente:

> **PRIMERO:**
> **El Sr. David J. Allio Littauer, de ahora en adelante el Sr. Allio, en forma libre y voluntaria, y como muestra de buena fe se compromete en abonar a la Sra. Carmen Santiago Chardón la cantidad de cincuenta mil dólares ($50,000.00) luego de firmarse este acuerdo, y sujeto a la aprobación del Tribunal, los cuales serán pagaderos de la siguiente forma:**
> 1. **Trece mil novecientos noventa y un dólares con 51 centavos (13,991.51) en concepto de honorarios de abogados pagaderos de la siguiente forma:**
>    i. **Siente mil cinco dólares con treinta centavos (7,005.30) a nombre de Cordero Alcaraz, Law Offices**
>    ii. **Seis mil novecientos ochenta y seis dólares con veintiún centavos (6,986.21) a nombre de Santoni-Cruz & Asociados, LLC.**
> 2. **Treinta y seis mil con ocho dólares con cuarenta y nueve centavos (36,008.49) pagaderos a Carmen Santiago.**
>
> *Mr. Allio, freely and voluntarily, and as a sign of good faith agrees to pay Ms. Carmen Santiago Chardón the amount of fifty thousand dollars ($50,000.00) at the date of acceptance of this agreement and subsequent Court approval, which will be paid as it follows:*
> 1. *Thirteen thousand nine hundred ninety-one dollars and fifty-one cents (13,991,51) for attorney fees which will be paid as it follows:*
>    i. *Seven thousand and five dollars with thirty cents (7,005.30) payable to Cordero Alcaraz Law Offices*
>    ii. *Six thousand nine hundred and eighty-six dollars with twenty -one cents (6,986.21) payable to Santoni-Cruz & Asociados, LLC-*
> 2. *Thirty-six thousand eight dollars and forty-nine cents (36,008.49) payable to Carmen Santiago.*[64] (Énfasis nuestro).

---

[64] Apéndice del Recurso de Apelación, págs. 145-147.

El apelante en este caso induce a error al tribunal al argumentar que erró el TPI al actuar sin jurisdicción y adjudicar una controversia sobre la obligación contractual del David Allio y Santiago Chardón mediante sentencia sumaria cuando dicho asunto se encuentra bajo la jurisdicción de otra sala hermana. El TPI estableció mediante *Resolución* en el caso SJ2023CV7752 lo siguiente:

[...]

### *Resolución*

A solicitud de reconsideración de nuestra resolución, que declaró *No Ha Lugar* la solicitud de desestimación de la reconvención presentada por la Demandada, el Tribunal provee, igualmente, No ha Lugar. Esta determinación no se basa en los méritos, sino como cuestión de umbral. Por tal razón, resulta innecesario la comparecencia del defensor judicial sobre el asunto.

Con la solicitud de desestimación, la Parte Demandante procura que el Tribunal entre en los méritos de una controversia que se está ventilando en el caso SJ2023cv10664, sobre nulidad de la *Resolución* emitida en el caso SJ2021CVRF00135. Con el fin de evitar duplicidad de dictámenes sobre un mismo asunto y por razón de que el caso de epígrafe no es el foro para ventilar esa controversia, la Magistrada que suscribe **determina que la reconvención debe permanecer y los méritos de la misma se verán afectados directamente de la determinación que se emita en el caso SJ2023cv10664.** (Énfasis nuestro).

**La Orden para el depósito de los $50,000 procuró disipar la controversia en torno a la solicitud de descalificación de la representante legal de la Parte Demandada en el caso de epígrafe y fue únicamente a esos efectos que se ordenó el depósito. La procedencia del pago dependerá de lo que se resuelva en el SJ2023cv10664.** [65] (Énfasis nuestro).

[...]

Del precitado texto se deprende claramente que la sala hermana que se encontraba atendiendo el caso de liquidación de herencia estableció mediante *Resolución* que no atendería el asunto de la reconvención hasta tanto el TPI adjudicara la procedencia del pago de $50,000.000 en el caso de epígrafe. Del mismo modo,

---

[65] Apéndice del Recurso de Apelación, págs. 74-75.

dictaminó que la reconvención y los méritos de esta se verían afectados directamente por la determinación que se emitiera en el caso de epígrafe. Por lo tanto, es forzoso concluir que la adjudicación hecha por el TPI en el caso SJ2023CV10664 no fue errada, ni hecha en ausencia de jurisdicción.

Al declarar *Ha Lugar* la solicitud sumaria de Santiago Chardón y consecuentemente desestimar la acción de nulidad incoada por Michael Allio, el TPI sostuvo la validez del contrato entre las partes. Sobre ello, esbozó lo siguiente:

> [...]
>
> Es nuestra contención que nacieron obligaciones contractuales no-personalísimas en favor de la Sra. Carmen Santiago Chardón con la otorgación de las estipulaciones, por lo que la notificación tardía de la Resolución emitida por la Sala de Familia no anula la anterior aceptación de obligación por parte del causante. Permitir lo contrario sería desvirtuar las relaciones contractuales y admitir una carga opresiva para quien advierte acreedor del cumplimiento de las obligaciones que nacen a raíz de los negocios jurídicos. La *Resolución,* que valga resaltar habia sido enmendada por el Tribunal previo al fallecimiento del Sr. Allio Litauer, simplemente formalizaba el acuerdo ante el tribunal, pero no creaba nuevas obligaciones, ni validaba un acuerdo que ya habia sido perfeccionado a la luz del articulado Código Civil de Puerto Rico. Dicho de otro modo, la obligación no depende de la notificación para ser efectiva, toda vez que había quedado válidamente constituida.
>
> [...]

En aras de evitar la ocurrencia de duplicidad de dictámenes sobre el mismo asunto, el TPI optó por delegar la adjudicación sobre la acción nulidad a la otra sala que se encontraba atendiendo el pleito independiente instada por Michael Allio. Fue precisamente este último el que optó por presentar un pleito aparte para atender el asunto tres meses después de haber instado un recurso judicial para iniciar el proceso de repartición de herencia. Sin embargo, luego de que advino final y firme la *Sentencia,* y el dictamen emitido no le favoreció, este pretende argumentar a través del presente recurso que el TPI actuó sin jurisdicción e incurrió en abuso de

discreción. Sobre esto, es evidente que no le asiste la razón al apelante en ninguno de los señalamientos de error esbozados en su recurso apelativo.

De otra parte, debemos tener presente que la *Resolución* en el caso de Relaciones de Familia fue acogido antes de la muerte del señor David Allio. El hecho procesal de la notificación con posterioridad al fallecimiento de este último no anula, ni atenta contra la voluntad de las partes consignadas en el acuerdo sometido ante la consideración del tribunal. La notificación judicial sobre un acuerdo de transacción aprobado por el tribunal no es un requisito de forma para que el mismo adquiera validez. Las partes no estipularon nada sobre el requerimiento de notificación, se limitaron a establecer que la validez de contrato de transacción estaría sujeta a la aprobación judicial. En este caso, no hay duda de que el Tribunal aprobó el contrato de transacción suscrito por las partes.

**IV.**

Por los fundamentos que anteceden, los cuales hacemos formar parte integral de la presente *Sentencia, confirmamos* el dictamen apelado.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones