ESTADO LIBRE ASOCIADO DE PUERTO RICO
EN EL TRIBUNAL DE APELACIONES
PANEL V

| ELADIO LÓPEZ REYES Y OTROS<br><br>Apelantes<br><br>v.<br><br>BELARDO & NIEVES, INC. Y OTROS<br><br>Apelados | **KLAN202401008** | *Apelación* procedente del Tribunal de Primera Instancia Sala Superior de San Juan<br><br>Civil Núm. SJ2022CV02566<br><br>Sobre: Nulidad de Sentencia, Cobro de Dinero |
|---|---|---|

Panel integrado por su presidente, el Juez Hernández Sánchez, el Juez Bonilla Ortiz y la Jueza Mateu Meléndez.

Bonilla Ortiz, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 17 de enero de 2025.

Comparece ante este foro el Sr. Eladio López Reyes, la Sra. Francisca Quiñones García y la Sociedad de Gananciales compuesta por ambos (matrimonio López-Quiñones o "los apelantes") y nos solicitan que revisemos una *Sentencia* emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan, notificada el 12 de julio de 2024. Mediante el referido dictamen, el foro primario desestimó con perjuicio la *Demanda Enmendada* instada por los apelantes.

Por los fundamentos que se exponen a continuación, **CONFIRMAMOS** la *Sentencia* apelada.

### I.

El presente caso inició con la presentación de una *Demanda* instada por el matrimonio López-Quiñones el 1 de abril de 2022, sobre nulidad de sentencia, cobro de dinero, y daños y perjuicios, en contra de Belardo & Nieves, Inc., la Sucesión de Esteban Nieves Flores, compuesta por sus hijas Sandra Ivette Nieves Santiago

(señora Nieves Santiago) y Rosa María Nieves Sanchez (señora Nieves Sánchez) (en conjunto, "parte apelada").[1] Posteriormente, el 13 de abril de 2022, enmendaron la demanda.[2] En esencia, mencionaron que el 26 de noviembre de 2014, Belardo & Nieves presentó una *Demanda* de cobro de dinero y ejecución de hipoteca en contra de los miembros de la Sucesión de Esteban Nieves, KCD2014-2639.[3] No obstante, que el 13 de marzo de 2018 solicitaron intervenir en el pleito, puesto que, alegaron ser dueños del inmueble en controversia. Expusieron que, el alegado pagaré que Belardo & Nieves solicitó ejecutar, no era negociable, ni real. Sostuvieron que, había sido un contrato de venta simulada que realizaron con el señor Nieves sobre la propiedad en controversia, por lo que, desconocían como en Belardo & Nieves habían adquirido el pagaré.

No obstante, agregaron que luego de varias conversaciones entre las partes llegaron a un acuerdo el cual había sido acogido y aprobado mediante *Sentencia* por el foro primario, siendo emitida y notificada el 31 de mayo de 2019.[4] Según consta del expediente, en la *Sentencia* fueron incorporados los términos de un acuerdo transaccional recogidos en la *Minuta* del 13 de mayo de 2019 ante una comisionada especial.[5] El foro primario

---

[1] *Demanda*, págs. 1-50 del apéndice del recurso.
[2] *Demanda Enmendada,* págs. 51-66 del apéndice del recurso.
[3] Según surge del *Escrito Belardo & Nieves en Cumplimiento de Orden y Trasfondo Procesal*, entrada núm. 50 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC), Belardo & Nieves comenzó un procedimiento de ejecución de un pagaré contra la Sucesión de Esteban Nieves. Sostuvo que, era el tenedor de un pagaré hipotecario, sobre una propiedad que pertenecía a la Sucesión de Esteban Nieves Flores, el cual estaba vencido, líquido y exigible. El 13 de octubre de 2015, fue notificada la *Sentencia* sobre el cobro y ejecución de hipoteca, la cual nunca fue apelada. La escritura de venta judicial fue presentada en el Registro de la Propiedad al asiento 2016-089533-SJ03, siendo debidamente inscrita a su favor el 19 de septiembre de 2016. Por ello, esbozó que los apelantes no eran los titulares, ni los tenedores del pagaré.
[4] *Sentencia*, pág. 437 del apéndice del recurso.
[5] *Minuta*, págs. 438-453 del apéndice del recurso.

concluyó que se terminaba de disponer de "la totalidad de las reclamaciones de todas las partes […]."

Sin embargo, los apelantes instaron la demanda de autos solicitando la nulidad de dicha *Sentencia*. Alegaron que hubo falta de consentimiento de partes indispensables, falta de notificación, fraude y/o mala fe, y falta de debido proceso de ley. Enfatizaron que, el contrato de transacción debía haber sido consentido por escrito por el matrimonio, cada uno por sí y en representación de la Sociedad Legal de Gananciales. Agregaron que la señora Nieves Sánchez, quien había sido emplazada por edicto y luego le fue anotada la rebeldía, se le debió designar un administrador para su representación y administración de bienes. Por ello, entre otras alegaciones, reiteraron que era ineficaz el contrato de transacciones. Como consecuencia, solicitaron la nulidad de la *Sentencia*, que se obligara a los apelados a satisfacer la suma de $960,000.00, más daños y perjuicios, intereses devengados, costas, gastos y honorarios, y finalmente, se ordenara al Registrador a inscribir la propiedad inmueble a su favor.

Luego de innumerables incidencias procesales, el 30 de abril de 2024, Belardo & Nieves presentó una moción de *Desestimación, Cosa Juzgada y Stopell*.[6] Mediante esta, plantearon que en la *Sentencia* notificada el 31 de mayo de 2019, dio por finalizado la totalidad de las reclamaciones de todas las partes. Asimismo, que, conforme al acuerdo transaccional, los apelantes y las demás partes desistían con perjuicio de todas las reclamaciones instadas o las que pudieron haberse

---

[6] *Desestimación, Cosa Juzgada y Stopell*, págs. 377-383 del apéndice del recurso.

presentado. Alegó que, el matrimonio López-Quiñones busca retractarse de un acuerdo juramentado y emitido frente a un tribunal. A su vez, que los apelantes han presentado los mismos planteamientos ante el Foro Apelativo (KLCE202101262[7] y KLCE202201327[8]), y las decisiones han sido en contra del matrimonio. Como consecuencia, solicitaron que fuera desestimada con perjuicio la reclamación, con la imposición de gastos, costas y honorarios de abogados.

El 8 de mayo de 2023, la señora Nieves Santiago presentó una *Solicitud de Sentencia Sumaria*.[9] En esta, reiteró que las partes habían consentido al "*Acuerdo Transaccional* bajo juramento del 13 de mayo de 2019, recogido mediante *Sentencia* por el Tribunal de Primera Instancia el 31 de mayo de 2019, confirmado por el Tribunal de Apelaciones y expresado que la parte aquí demandante efectivamente consintió por conducto de su representante legal; y que la codemandada Rosa María Nieves Sánchez fue debidamente emplazada y notificada de la única *Sentencia* dictada en su contra." Además, señaló que lo que pretendían los apelantes era relitigar un caso ya adjudicado, sin tener un nuevo fundamento. Por ello, solicitó que fuera declarada no ha lugar la demanda enmendada instada por los apelantes.

En respuesta, el 12 de junio de 2023, el matrimonio López-Quiñones presentó una *Moción en Oposición a la Moción de Sentencia Sumaria presentada por Sandra Nieves Santiago*.[10] Mediante la cual, alegaron que la causa de

---

[7] *Resolución*, págs. 398-402 del apéndice del recurso.
[8] *Resolución*, págs. 403-408 del apéndice del recurso
[9] *Solicitud de Sentencia Sumaria*, págs. 411-431 del apéndice del recurso.
[10] *Moción en Oposición a la Moción de Sentencia Sumaria presentada por Sandra Nieves Santiago*, págs. 564-585 del apéndice del recurso.

acción principal era la nulidad del contrato de transacción judicial en los casos KCD2010-3903 consolidado con el KCD2014-2639. Enfatizaron que, el contrato era nulo, por ende, la sentencia también era nula. Reiteraron que, el contrato debió ser consentido por el matrimonio, cada uno por sí y en representación de la Sociedad de Gananciales, debido a que, se estaban enajenando bienes gananciales. A su vez, que la señora Nieves Santiago era parte ausente y se le debió nombrar defensor judicial, puesto que, dicho contrato de transacción requería el consentimiento de ella. En cuanto a Belardo & Nieves, manifestaron que requerían una resolución de la Junta de Directores autorizándolos a realizar la transacción. A tono con lo anterior, solicitaron anular el contrato de transacción por falta de partes indispensables y fraude al tribunal.

El 18 de julio de 2023, la señora Nieves Santiago presentó una *Réplica a Oposición a Sentencia Sumaria*.[11] Mediante esta, planteó que los apelantes alegaron que ambos debieron firmar el contrato de transacción, puesto que, la transacción disponía de bienes muebles e inmuebles. Sin embargo, destacó que los apelantes no eran los titulares del bien inmueble en controversia. Asimismo, añadió que el Foro Apelativo en el caso KLCE202101262, determinó lo siguiente:

> En esencia, la Peticionaria pretende anular una transacción aprobada por el Tribunal De Primera Instancia en el 2019. No obstante, esta transacción se formalizó ante el Tribunal de Primera Instancia con consentimiento del Abogado, entonces representante legal de la Peticionaria, quien fue notificado oportunamente con copia de la Minuta y de la Sentencia. En la medida que la peticionaria alegue que no

---

[11] *Réplica a Oposición a Sentencia Sumaria*, págs. 923-928 del apéndice del recurso.

consintió a la transacción, esto es un asunto que ella debe dilucidar con el Abogado. Esta situación, sin embargo, no constituye una base legítima para atacar colateralmente el acuerdo formal alcanzado ante el TPI a través de lo(a)s correspondientes abogado(a)s de las partes involucradas. Más aún, la Orden lo que hace es reiterar lo anteriormente dispuesto en la Orden de 2019, sin que se haya indicado que la Peticionaria hubiese solicitado revisión de esta última.

En vista de ello, solicitó que la oposición a su solicitud de sentencia sumaria fuera declarada no ha lugar.

Luego de varias incidencias procesales, el 12 de julio de 2024, el foro primario notificó la *Sentencia* apelada.[12]    Mediante la cual, determinó que "las sentencias y resoluciones dictadas en los casos consolidados KCD2010-3903, KCD2014-2639, y las determinaciones del Tribunal de Apelaciones en los casos KLCE202101262 y KLCE202201327, son finales, firmes e inapelables y en todos los casos estaban involucradas las mismas partes demandantes, demandadas o partes con interés del caso de marras." Por consiguiente, concluyó que el matrimonio López-Quiñones estaba impedido de relitigar nuevamente lo que pudieron haber litigado previamente.   De este modo, determinó que procedía la desestimación de la *Demanda Enmendada* que presentó el matrimonio López-Quiñones, en consecuencia, desestimó con perjuicio por el fundamento de cosa juzgada.

En desacuerdo, el 29 de julio de 2024, los apelantes presentaron una *Moción de Reconsideración*.[13]    No obstante, el 9 de octubre de 2024, el foro primario mediante *Resolución*, la declaro *No Ha Lugar*.[14]

---

[12] *Sentencia*, págs. 1022-1033 del apéndice del recurso.
[13] *Moción de Reconsideración*, págs. 1034-1040 del apéndice del recurso.
[14] *Resolución*, págs. 1066-1067 del apéndice del recurso.

Aún inconformes, el 12 de noviembre de 2024, los apelantes presentaron el recurso que nos ocupa y formularon el siguiente señalamiento de error:

> ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL DESESTIMAR LA DEMANDA POR EL FUNDAMENTO DE COSA JUZGADA A PESAR DE QUE NO EXISTE SENTENCIA ANTERIOR RESOLVIENDO LA MISMA CAUSA DE ACCIÓN.

El 13 de diciembre de 2024, la señora Nieves Santiago presentó el escrito *Oposición a Apelación*. En la misma fecha, Belardo & Nieves presentó una moción de *Desestimación, Oposición a Recurso y Otros Extremos*.

No obstante, el 2 de enero de 2024, los apelantes presentaron una *Moción en Solicitud de Orden por Incumplimiento*.

Estando en posición de resolver, procedemos a así hacerlo.

## II.

### -A-

En nuestro ordenamiento rige el principio de la libertad de contratación o la autonomía de la voluntad. *Coop. Sabaneña v. Casiano Rivera*, 184 DPR 169, 173 (2011); *De Jesús González v. A.C.* 148 DPR 255, 263 (1999). Ello quiere decir que nadie está obligado a contratar. *PRFS v. Promoexport*, 187 DPR 42, 55 (2012). Este principio se articula en el Artículo 1232 del Código Civil de 2020, 31 LPRA sec. 9743, el cual dispone, en lo aquí pertinente, que: "[e]s facultativo contratar o no hacerlo, y hacerlo, o no, con determinada persona. Estos derechos no pueden ejercerse abusivamente ni contra una disposición legal. Las partes pueden acordar cualquier cláusula que no sea contraria a la ley, a la moral o al orden público" y tienen fuerza de ley entre las partes, ante sus sucesores y ante terceros. *Íd*, sec. 9754.

No obstante, según se reconoce expresamente en el precitado artículo, el principio de libertad de contratación no es absoluto y está sujeto a la intervención de los tribunales si se establecen pactos contrarios a las leyes, a la moral o al orden público. *Coop. Sabaneña v. Casiano Rivera*, supra; *De Jesús González v. A.C.,* supra. Es por ello que, independientemente del tipo de contrato que se trate y de la importancia que este merezca para las partes contratantes, es nulo y, por lo tanto, inexistente un contrato, que resulte contrario a las leyes, a la moral o al orden público. *Aponte Valentín v. Pfizer Pharmaceuticals,* LLC, 208 DPR 263, 300 (2021); *Morales v. Mun. de Toa Baja,* 119 DPR 682, 693 (1987). Ahora bien, cuando un contrato es legal y válido, y no contiene vicio alguno, los tribunales no pueden relevar a una parte de su cumplimiento. *De Jesús González v. A.C.,* supra, pág. 271; *Mercado, Quilinchini v. UCPPR*, 143 DPR 610 (1997).

En tanto negocios jurídicos la interpretación de los contratos se rige por el esquema dispuesto en el Código Civil, a saber:

> En la interpretación del negocio jurídico son de aplicación las siguientes reglas:
>
> (a) Se presume que el negocio jurídico se otorga de buena fe; y
>
> (b) Si el negocio jurídico es unilateral […]
>
> Si los términos de un negocio jurídico bilateral son claros y no dejan duda sobre la intención de las partes, se estará al sentido literal de sus palabras.
>
> Si las palabras parecen contrarias a la intención evidente de las partes, prevalecerá la intención sobre lo expresado.

Para determinar la intención en ambos casos, debe atenderse principalmente a la conducta de la parte, sea coetánea, posterior o aun anterior al otorgamiento del negocio jurídico. Art. 354 del Código Civil, 31 LPRA sec. 6342.

Asimismo, las cláusulas de un negocio jurídico deben interpretarse de manera integrada, esto es, las unas por medio de las otras y mediante la atribución del sentido apropiado al conjunto. Art. 356 del Código Civil, 31 LPRA sec. 6344.

Uno de los tipos de contratos reconocidos en nuestro ordenamiento jurídico es el contrato por transacción, el cual está regulado por los Artículos 1497-1504 del Código Civil de Puerto Rico. 31 LPRA secs. 6344-10648. Por el referido contrato, mediante concesiones recíprocas, las partes ponen fin a un litigio o incertidumbre sobre una relación jurídica. Art. 1497 del Código Civil, 31 LPRA sec. 10641. El mismo debe ser interpretado de forma restrictiva y produce los efectos de cosa juzgada. Art. 1499, 31 LPRA sec. 10643. La transacción debe constar en un escrito firmado por las partes o en una resolución o una sentencia dictada por el tribunal. Si se refiere a derechos constituidos mediante escritura pública, se requiere esta formalidad. Art. 1503, 31 LPRA sec. 10647.

**-B-**

La Regla 49.2 de las de Procedimiento Civil establece el mecanismo procesal disponible para solicitar el relevo de los efectos de una sentencia cuando esté presente alguno de los fundamentos allí expuestos. 32 LPRA Ap. V, R.49.2. Esta regla provee un mecanismo post sentencia para impedir que se frustren los fines de la justicia mediante tecnicismos y

sofisticaciones. *García Colón et al. v. Sucn. González,* 178 DPR 527, 539 (2010). Este remedio permite al tribunal hacer un balance entre dos intereses en conflicto, de una parte, que toda litigación sea concluida y tenga finalidad y de otra, que en todo caso se haga justicia. *Náter v. Ramos*, 162 DPR 616, 624 (2004).

Ahora bien, independientemente de la existencia de uno de los fundamentos en la Regla 49.2 de Procedimiento Civil, *supra*, relevar a una parte de los efectos de una sentencia es una decisión discrecional, salvo en los casos de nulidad o cuando la sentencia ha sido satisfecha. *Náter v. Ramos*, supra. La Regla 49.2 de Procedimiento Civil, *supra*, dispone específicamente, como sigue:

> Mediante una moción y bajo aquellas condiciones que sean justas, el tribunal podrá relevar a una parte o a su representante legal de una sentencia, orden o procedimiento por las razones siguientes:
>
> (a) Error, inadvertencia, sorpresa, o negligencia excusable;
>
> (b) Descubrimiento de evidencia esencial que, a pesar de una debida diligencia, no pudo haber sido descubierta a tiempo para solicitar un nuevo juicio de acuerdo con la Regla 48;
>
> (c) Fraude (incluyendo el que hasta ahora se ha denominado intrínseco y también el llamado extrínseco), falsa representación u otra conducta impropia de la parte adversa;
>
> (d) Nulidad de la sentencia;
>
> (e) La sentencia ha sido satisfecha, renunciada, o se ha cumplido con ella, o la sentencia anterior en que se fundaba ha sido revocada o de otro modo dejada sin efecto, o no sería equitativo que la sentencia continuare en vigor; o
>
> (f) Cualquier otra razón que justifique la concesión de un remedio contra los efectos de una sentencia.

Las disposiciones de esta regla no serán aplicables a las sentencias dictadas en pleitos de divorcio, a menos que la moción se funde en las razones (c) o (d) de esta regla. La moción se presentará dentro de un término razonable, pero en ningún caso después de transcurridos seis (6) meses de haberse registrado la sentencia u orden o haberse llevado a cabo el procedimiento. Una moción bajo esta Regla 49.2 no afectará la finalidad de una sentencia ni suspenderá sus efectos. Esta regla no limita el poder del tribunal para:

(1) conocer de un pleito independiente con el propósito de relevar a una parte de una sentencia, una orden o un procedimiento;

(2) conceder un remedio a una parte que en realidad no haya sido emplazada, y

(3) dejar sin efecto una sentencia por motivo de fraude al tribunal. […] 32 LPRA Ap. V, R. 49.2.

Para que proceda el relevo de sentencia bajo la Regla 49.2 de Procedimiento Civil, *supra*, el peticionario del relevo está obligado a justificar su solicitud amparándose en una de las causales establecidas en la Regla. *García Colón et al. v. Sucn. González*, *supra*, pág. 540. Por igual, el Tribunal Supremo de Puerto Rico ha expresado con relación a la Regla 49.2 de Procedimiento Civil: "que el precepto debe interpretarse liberalmente y cualquier duda debe resolverse a favor del que solicita que se deje sin efecto una sentencia o anotación de rebeldía, a fin de que el proceso continúe y el caso pueda resolverse en sus méritos." *Íd,* pág. 541. Este precepto no está disponible para alegar cuestiones sustantivas que debieron ser planteadas mediante los recursos de reconsideración y apelación. *Íd.* Por su parte, el inciso (4) de la Regla 49.2 de Procedimiento Civil, *supra*, otorga al Tribunal la facultad de relevar a una

parte de los efectos de una sentencia cuando se determine su nulidad. Una sentencia es nula cuando se ha dictado sin jurisdicción o cuando al dictarla se ha quebrantado el debido proceso de ley. Íd., pág. 541.

Bajo este fundamento, no hay margen de discreción. Es decir, si una sentencia es nula, tiene que dejarse sin efecto independientemente de los méritos que pueda tener la defensa o la reclamación del perjudicado. Sobre el particular, nuestro más Alto Foro ha resuelto que: "la discreción que tiene un tribunal, al amparo de las disposiciones de la referida Regla 49.2 de Procedimiento Civil, para relevar a una parte de los efectos de una sentencia resulta inaplicable cuando se trata de una sentencia que es "nula"; si es nula, no hay discreción para el relevo, hay obligación de decretarla nula. En consecuencia, ante la certeza de nulidad de una sentencia, es mandatorio declarar su inexistencia jurídica, independientemente de que la solicitud a tales efectos se haga con posterioridad a haber expirado el plazo de seis (6) meses que establece la Regla 49.2 de Procedimiento Civil." *Montañez v. Policía de Puerto Rico*, 150 DPR 917, 921-922 (2000); *Bco. Santander P.R. v. Fajardo Farms Corp.*, 141 DPR 237, 243-244 (1996); *Figueroa v. Banco de San Juan*, 108 DPR 680, 689 (1979); *García Colón et al. v. Sucn. González*, supra, págs. 543-544. Para ello, la propia regla dispone que el tribunal puede conocer un pleito independiente transcurrido el término de seis (6) meses cuando la parte promovente plantea la nulidad de una sentencia. *Santander PR v. Fajardo Farms Corp.*, supra, pág. 247. Dentro del contexto de esta regla, una sentencia es nula cuando el tribunal ha actuado de una manera

incompatible con el debido procedimiento de ley. *Rivera v. Jaume*, 157 DPR 562, 574 (2002) citando *ELA v. Tribunal Superior*, 86 DPR 692 (1962).

Al respecto, nuestro Tribunal Supremo expresó en *Figueroa v. Banco de San Juan* lo siguiente:

> El esquema amplio y abarcador de remedios que provee la Regla 49.2 reduce considerablemente el ejercicio de esta acción independiente a los casos en que ha transcurrido el término fatal de seis meses y las circunstancias sean de tal índole que el tribunal pueda razonablemente concluir que mantener la sentencia constituiría una grave injusticia contra una parte que no ha sido negligente en el trámite de su caso y que, además, tiene una buena defensa en los méritos. *Figueroa v. Banco de San Juan., 108 DPR* en la pág. 609.

Surge claramente que la posibilidad de instar un pleito independiente se reserva para situaciones excepcionales cuando es imposible solicitar el relevo dentro del mismo pleito. En fin, es un mecanismo de excepción para circunstancias en las que no están disponibles los remedios procesales dentro de un pleito. De lo contrario, el pleito independiente para el relevo de una determinación se convertiría en "un mero mecanismo procesal para extender indirectamente el término de revisión en menoscabo del interés fundamental en la estabilidad y certeza de los procedimientos judiciales." *Figueroa v. Banco de San Juan*, supra, pág. 688.

-C-

La doctrina de cosa juzgada tiene el propósito de finalizar los litigios que fueron adjudicados de forma definitiva y, de este modo, "garantizar la certidumbre y seguridad de los derechos declarados mediante una resolución judicial para evitar gastos adicionales al Estado y a los litigantes". *Presidential v.*

*Transcaribe*, 186 DPR 263 (2012); *PR Wire Prod. v. C. Crespo & Assoc.*, 175 DPR 139 (2008). Así, esta defensa tiene el efecto de evitar que se re litiguen asuntos que fueron o que pudieron litigarse y adjudicarse en el pleito anterior. *Parrilla v. Rodríguez*, 163 DPR 263 (2004). Según ha resuelto el Tribunal Supremo de Puerto Rico, "la presunción de cosa juzgada sólo tendrá efecto si existe la más perfecta identidad de las cosas, las causas, las personas de los litigantes y la calidad con que lo fueron." *Presidential v. Transcaribe*, supra.

El requisito de la identidad de cosas significa que el segundo pleito versa sobre el mismo asunto adjudicado en el primer pleito, aunque las cosas se hayan disminuido o alterado. *Rodríguez Rodríguez v. Colberg Comas*, 131 DPR 212 (1992). Es decir, existe identidad de las cosas "cuando un juez, al hacer una determinación, se expone a contradecir el derecho afirmado en una decisión anterior." *Presidential v. Transcaribe*, supra. Sobre el particular, hay que evaluar no sólo la cosa sobre la cual se origina la controversia, sino también el planteamiento jurídico que se genera en torno a ella." *Íd*.

En cuanto al requisito de identidad de las causas, existe cuando los hechos y fundamentos de las peticiones son idénticos en lo que afecta la cuestión planteada. *Íd*. En otras palabras, al determinar si existe identidad de causas debemos analizar si ambas reclamaciones se basan en la misma transacción o núcleo de hechos. *Íd*. Por otro lado, este requisito "exige que la parte demandante acumule en un pleito todas las posibles teorías legales en virtud de las cuales podría tener derecho a un remedio y que surjan de los mismos hechos

transaccionales." *Martínez Díaz v. ELA*, 182 DPR 580 (2011). Lo anterior, ya que el efecto de cosa juzgada aplica no solamente a las reclamaciones alegadas en la demanda, sino también a todas aquellas que pudieron acumularse. *Íd.*

"Aun estando presentes los componentes necesarios para que la doctrina de cosa juzgada surta efecto, la referida figura legal no es absoluta y debe siempre considerarse conjuntamente con el saludable principio de que debe dispensarse justicia en cada caso." *Beníquez et al. v. Vargas et al.,* 184 DPR 210 (2012). "[L]a sentencia anterior es concluyente en cuanto a aquellas materias que de hecho se suscitaron y verdaderamente o por necesidad se litigaron y adjudicaron, pero no es concluyente en cuanto a aquellas materias que pudieron ser, pero que no fueron litigadas y adjudicadas en la acción anterior." *Íd.*

Así pues, la doctrina de cosa juzgada es lo ya resuelto por tribunal competente, lo cual tiene el propósito de impartir finalidad a los dictámenes judiciales. *Casco Sales v. Mun. de Barranquitas*, 172 DPR 825 (2007). Sin embargo, no procede aplicar de forma inflexible la doctrina de cosa juzgada cuando hacerlo derrotaría los fines de la justicia, especialmente si hay envueltas consideraciones de orden público. *Parrilla v. Rodríguez*, supra; *Pérez v. Bauzá*, 83 DPR 220 (1961).

De otro lado, nuestro máximo Foro ha reconocido otra modalidad de cosa juzgada, conocida como impedimento colateral por sentencia. *PR Wire Prod. v. C. Crespo & Assoc.,* supra; *A & P Gen. Contractors v. Asoc. Caná,* 110 DPR 753 (1981). La misma surte efectos

cuando un hecho esencial para el pronunciamiento de una sentencia se dilucida y determina mediante sentencia válida y final. *PR Wire Prod. v. C. Crespo & Assoc.*, supra. Por lo tanto, tal determinación es concluyente en un segundo pleito entre las mismas partes, aunque estén involucradas causas de acción distintas. *Íd.*

Así, el impedimento colateral por sentencia impide que se litigue en un pleito posterior un hecho esencial que fue adjudicado mediante sentencia final en un litigio anterior. *PR Wire Prod. v. C. Crespo & Assoc.*, supra. No obstante, a diferencia de la doctrina de cosa juzgada, la aplicación de la figura de impedimento colateral por sentencia no exige la identidad de causas. *Íd.* Esto es, que la razón de pedir plasmada en la demanda sea la misma en ambos litigios. *Íd.*

Al igual que la doctrina de cosa juzgada, el propósito de la figura de impedimento colateral por sentencia es promover la economía procesal y judicial, y amparar a los ciudadanos del acoso que necesariamente conlleva litigar en más de una ocasión hechos ya adjudicados. *PR Wire Prod. v. C. Crespo & Assoc.*, supra.

## III.

En el caso de autos, el matrimonio López-Quiñones alega que incidió el foro primario al desestimar la demanda por el fundamento de cosa juzgada, cuando la *Sentencia* anterior no resolvió la misma causa de acción. Los apelantes expusieron que mediante su causa de acción solicitaron la nulidad de la *Sentencia* dictada el 31 de mayo de 2019 en los casos K CD2010-3903 y K CD2014-2639, bajo los fundamentos de falta de consentimiento, objeto y causa, colusión, fraude, mala fe y falta del debido proceso de ley.

En su demanda, argumentaron que tenían un interés propietario en un bien gravado por la hipoteca cuya ejecución solicitó Belardo & Nieves en uno de los casos consolidados, puesto que residían en la propiedad. Alegaron que habían realizado un contrato con el señor Nieves para una venta simulada sobre la propiedad, pero que una vez falleció, la Sucesión de Esteban Nieves al momento de presentar su planilla, no presentó el pagaré hipotecario como activo perteneciente a su patrimonio, por lo que, desconocían como Belardo & Nieves tenían el alegado pagaré en su poder.[15]

Sin embargo, luego de varios trámites procesales y conversaciones entre las partes, llegaron a un acuerdo transaccional, recogido la *Minuta* del 13 de mayo de 2019. Dicho acuerdo fue acogido y aprobado por el foro primario mediante *Sentencia* emitida y notificada el 31 de mayo de 2019, donde concluyó que "[l]a sentencia así dictada, conforme a lo solicitado por las partes, adviene final, firme e inapelable desde hoy y dispone de la totalidad de las reclamaciones de todas las partes en los casos consolidados del epígrafe constituyendo y teniendo el efecto de cosa juzgada."

No obstante, los apelantes sostuvieron que la *Sentencia* era nula bajo el fundamento de que el día del acuerdo transaccional la señora Quiñones no compareció

---

[15] Según surge del *Escrito Belardo & Nieves en Cumplimiento de Orden y Trasfondo Procesal,* entrada núm. 50 en el Sistema Unificado Manejo de Casos (SUMAC), Belardo & Nieves comenzó un procedimiento de ejecución de un pagaré contra la Sucesión de Esteban Nieves. Sostuvo que, era el tenedor de un pagaré hipotecario, sobre una propiedad que pertenecía a la Sucesión de Esteban Nieves Flores, el cual estaba vencido, líquido y exigible. El 13 de octubre de 2015, fue notificada la *Sentencia* sobre el cobro y ejecución de hipoteca, la cual nunca fue apelada. La escritura de venta judicial fue presentada en el Registro de la Propiedad al asiento 2016-089533-SJ03, siendo debidamente inscrita a su favor el 19 de septiembre de 2016. Por ello, reiteró que el señor López no era el titular, ni el tenedor del pagaré.

a la vista, ni posteriormente ratificó el contrato. A su vez, que la señora Nieves Santiago era parte indispensable por lo que se requería el consentimiento de ella. Por ello, sostuvieron que el contrato transaccional era nulo y, por ende, la *Sentencia* también.

De otra parte, los apelantes, en su recurso esbozaron que erró el foro primario en la *Sentencia* apelada al concluir que estaban impedidos de re litigar todo aquello que pudieron haber litigado previamente en los casos consolidados. Añadieron que, "no existe ninguna sentencia que resuelva la causa de acción presentada en la demanda que nos ocupa. Es decir, no existe sentencia de ningún tribunal que resuelva que la sentencia del 31 de mayo de 2019, en los casos consolidados K CD2010-3903 y K CD2014-2639 no es nula." De esa manera, concluyeron que el foro primario resolvió a base de órdenes y resoluciones emitidas en casos anteriores, los cuales no constituían sentencias finales con efecto de cosa juzgada.

Según surge del derecho que antecede, la doctrina de cosa juzgada no permite que en un pleito posterior se litiguen cuestiones que pudieron ser reclamadas y adjudicadas en un pleito anterior de forma definitiva, de modo que se garantice la certidumbre y seguridad de los derechos declarados en una resolución judicial. *Presidential v. Transcaribe*, supra; *Parrilla v. Rodríguez y otros*, supra; *Mercado Riera v. Mercado Riera*, supra; Isaac *Sánchez v. Universal C.I.T. Credit*, supra. La referida doctrina persigue poner fin a los pleitos y, por otro lado, interesa que no se someta a un ciudadano a las molestias que supone litigar la misma

causa en más de una ocasión. *Íd*. También, busca promover la economía judicial y administrativa, impide litigios innecesarios y evita decisiones inconsistentes. *Íd*.

Para que proceda la doctrina de cosa juzgada, debe existir un decreto en el que concurra la más perfecta identidad de las cosas, las causas, las personas de los litigantes y la calidad con que lo fueron.

En el caso de autos, los apelantes intentan re litigar un caso el cual tiene una *Sentencia* que es final, firme e inapelable. Contrario a lo alegado por los apelantes, el caso de autos es un perfecto ejemplo de la doctrina de cosa juzgada. Las mismas partes del caso, el 13 de mayo de 2019, llegaron a un acuerdo transaccional, el cual fue consignado y aprobado por el foro primario mediante *Sentencia* el 31 de mayo de 2019.

Por todo lo anterior, determinamos que en la *Demanda Enmendada* del caso de autos aplica la doctrina de cosa juzgada, ya que, contiene la misma identidad de los litigantes, reclamaciones, controversias y alegaciones, las cuales ya fueron dilucidadas y resueltas previamente. En la *Sentencia*, el foro apelado concluyó que "se dispone en su totalidad de la reclamación instada por el señor Eladio López Reyes, la señora Francisca Quiñones García y la Sucesión Legal de Gananciales compuesta por ambos, mediante la Demanda de Intervención y la Demanda Enmendada Solicitando Nulidad de Sentencia y Sentencia Declaratoria en Cuanto a Escritura Simulada presentada en el Tribunal de Primera Instancia, caso civil número K CD2014-2639 (803) y **las partes desisten con perjuicio.**" Dicha determinación, dispuso de la totalidad de todas las reclamaciones que

instaron los apelantes, así como las que pudieron haber presentado.

Consecuentemente, coincidimos con el foro primario en que procedía desestimar, con perjuicio, la *Demanda Enmendada* del caso de epígrafe.

**IV.**

Por los fundamentos antes expuestos, **CONFIRMAMOS** la *Sentencia* apelada.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones